Mona Amini, Esq.
Nevada Bar No. 15381
Gustavo Ponce, Esq.
Nevada Bar No. 15084
**KAZEROUNI LAW GROUP, APC**
6940 S. Cimarron Road, Suite 210
Las Vegas, Nevada 89113
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523
mona@kazlg.com
gustavo@kazlg.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| HEATHER HILLBOM, individually and on behalf of all others similarly situated,<br><br>                     Plaintiff,<br><br>     vs.<br><br>R1 RCM, INC.; and DIGNITY HEALTH d/b/a DIGNITY HEALTH - ST. ROSE DOMINICAN HOSPITAL, ROSE DE LIMA CAMPUS,<br><br>                 Defendants. | Case No.: 2:24-cv-00664-JAD-EJY<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF CLASS FOR SETTLEMENT PURPOSES** |

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL BACKGROUND ...................................................................................... 1

III.  PROCEDURAL BACKGROUND ............................................................................. 1

IV.   THE SETTLEMENT ................................................................................................... 3

      A.    The Settlement Class ........................................................................................ 3

      B.    The Settlement Relief and Settlement Class Member Benefits ....................... 3

            1.    Medical Identity-Theft Monitoring and Protection Services ................... 3

            2.    Monetary Payment ................................................................................... 4

            3.    Out-of-Pocket Expenses Payment ........................................................... 5

            4.    Extraordinary Losses Payment ................................................................ 5

      C.    The Proposed Notice Program Will Provide the Best Notice Practicable, and the Claim Process is Reasonable ................................................................... 5

      D.    Request for Exclusion and Objection Procedures ........................................... 7

      E.    Release .............................................................................................................. 8

      F.    Service Award to Class Representative Plaintiff ............................................. 8

      G.    Attorney's Fee Award and Costs ..................................................................... 9

V.    ARGUMENT .............................................................................................................. 9

      A.    The Settlement Merits Preliminary Approval .................................................. 9

            1.    The Strength of Plaintiff's Case ............................................................ 12

            2.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation ......... 12

            3.    The Settlement Benefits and Relief Offered in the Settlement .............. 13

            4.    Arm's Length, Non-Collusive Settlement Negotiations ....................... 14

            5.    Experience and Views of Class Counsel and Adequate Representation of the Settlement Class ............................................................................. 15

            6.    The Settlement Has No Obvious Deficiencies ...................................... 16

            7.    The Proposed Method of Distributing Settlement Benefits and Processing Claims is Reasonable ....................................................................... 17

8.    The Settlement Agreement Treats Settlement Class Members Equally ................. 17

B.    The Settlement Class Should Be Certified.................................................................. 18

1.    The Settlement Class is Ascertainable .................................................. 18

2.    The Settlement Class is Numerous ...................................................... 18

3.    There are Common Questions of Law and Fact ...................................... 19

4.    Plaintiff's Claims are Typical of the Settlement Class .............................. 20

5.    Plaintiff and Class Counsel Are Able to Adequately Protect the Interests of the Settlement Class........................................................................... 20

6.    The Settlement Also Meets the Rule 23(b)(3) Requirements .................... 21

a)    Predominance is Satisfied ......................................................... 22

b)    Class Treatment is Superior ...................................................... 23

C.    The Court Should Appoint the Plaintiff as the Class Representative, Plaintiff's Counsel as Class Counsel, and Simpluris, Inc. the Settlement Administrator.............................. 23

D.    Schedule of Post-Settlement Events and Scheduling a Final Approval Hearing............. 24

VI.    CONCLUSION............................................................................................ 25

KAZEROUNI
LAW GROUP, APC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Pursuant to Fed. R. Civ. P. Rule 23, Plaintiff Heather Hillbom ("Plaintiff"), individually and on behalf of the Settlement Class,[1] seeks preliminary approval of a proposed class action data beach settlement with Defendants R1 RCM Inc. ("R1") and Dignity Health d/b/a St. Rose Dominican Hospital, Rose de Lima Campus ("Dignity Health" and, collectively with R1, "Defendants," and together with Plaintiff, the "Parties").

### II.    FACTUAL BACKGROUND

This data breach class action arises out of Defendants' alleged failure to properly secure and safeguard the personally identifying information ("PII") and personal health information ("PHI") of Plaintiff and approximately 16,120 Settlement Class Members, including but not limited to their names, Social Security numbers, dates of birth, addresses, contact information, medical record numbers, patient account numbers, medical information, and location of services. *See* Plaintiff's Class Action Complaint ("Complaint") ¶ 1.

On or around January 30, 2023, an unauthorized third party may have accessed the PII and/or PHI of Dignity Health's current and former patients, including Plaintiff and the Settlement Class Members, by exploiting a zero-day vulnerability within the GoAnywhere file transfer platform (the "Data Incident"). *Id*. ¶¶ 3, 46, 17. After learning of the Data Incident, Defendants undertook an investigation into the matter and began notifying Plaintiff and Settlement Class Members of the Data Incident in March 2024. *Id*. ¶¶ 17, 48, 50.

### III.    PROCEDURAL BACKGROUND

On April 5, 2024, Plaintiff filed the Complaint against Defendants in the U.S. District Court for the District of Nevada.  Plaintiff's case is titled *Heather Hillbom v. R1 RCM, Inc. and Dignity Health dba Dignity Health - St. Rose Dominican Hospital, Rosa de Lima Campus*, Case No. 2:24-cv-00664-JAD-EJY (D. Nev.) (the "Action"). Subsequently, Defendants moved to dismiss the Complaint in full on August 27, 2024, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules

---

[1] Capitalized terms not explicitly defined herein are defined as stated in the Settlement Agreement.

of Civil Procedure, (1) challenging Plaintiff's standing to bring her claims and to seek injunctive relief, and (2) seeking dismissal of the Complaint for an alleged failure to state a claim for which relief can be granted. After conclusion of briefing related to Defendants' Motion to Dismiss, the Parties sought a stay of the Action, including deferral of the hearing on Defendants' Motion to Dismiss, pending the Parties' participation in mediation.

On January 29, 2025, the Parties participated in a full-day mediation presided over by a well-respected neutral, Bruce Friedman, Esq. of JAMS.  In advance of the mediation, Plaintiff propounded informal discovery requests and, through the provision of informal discovery and the Parties' exchange of detailed mediation briefs outlining their positions with respect to liability, damages, and settlement-related issues, Plaintiff received additional information regarding the cause and the scope of the Data Incident and was able to be well-informed about and to evaluate the merits of Defendants' position. As a result of the Parties' arm's-length bargaining at the mediation, and the mediator's proposal provided by Mr. Friedman, to avoid the risk and expense of protracted litigation, the Parties reached a settlement.  Over the months following the mediation, the Parties engaged in further negotiation efforts to arrive at the terms as memorialized in the Settlement Agreement (the "Settlement," or "Agreement"), subject to the Court-approval process set forth therein. As demonstrated below, the Settlement provides significant relief for the Settlement Class, including a non-reversionary cash Settlement Fund of $675,000.00.

The Court should find the Settlement is within the range of reasonableness necessary to grant preliminary approval under Fed. R. Civ. P. 23(e) and enter an order: (i) granting preliminary approval of the Settlement; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) appointing the Plaintiff as Class Representative; (iv) appointing Abbas Kazerounian, Mona Amini, and Gustavo Ponce as Class Counsel for the Settlement Class; (v) approving the form of the Notice and the Notice Program; (vi) approving the Claim Form and the Claims process; (vii) appointing Simpluris, Inc. as the Settlement Administrator; (viii) establishing the Request for Exclusion and Objection procedures and deadlines; and (ix) scheduling a Final Approval Hearing, at which time the Court will decide whether to grant final approval of the Settlement and whether to grant Class Counsel's Motion for Fee Award and Costs and for a Service Award to Plaintiff.

IV.     **THE SETTLEMENT**

    A.  **The Settlement Class**

        The Parties have agreed that the following Settlement Class can be certified for settlement purposes:

> *All individuals whose PII and/or PHI was potentially impacted in the Data Incident who were sent notice of the Data Incident by Defendants.*

        In exchange for the Settlement Benefits, all Settlement Class Members who do not submit a timely Request for Exclusion will release all Released Claims against all Released Parties as detailed in the Settlement Agreement. SA §§ V.D, X.

    B.  **The Settlement Relief and Settlement Class Member Benefits**

        The Settlement provides for a non-reversionary $675,000.00 cash Settlement Fund, which will be fully funded by the Defendants within 14 days of the Preliminary Approval Order and used to make payments in the following order: (i) all Administrative Expenses (including applicable taxes, if any), (ii) any Court-approved Fee Award and Costs and Service Award, (iii) the costs of providing the Medical Identity-Theft Monitoring and Protection Services, (iv) Settlement Payments for Out-of-Pocket Expenses and Extraordinary Losses; and (v) Monetary Payments. SA § III.F.

        All Settlement Class Members may submit a Claim Form to receive (1) two years of Medical Identity-Theft Monitoring and Protection Services, which includes $1,000,000 Identity Theft Insurance; (2) a Monetary Payment, which will be a *pro rata* share of the Net Settlement Fund after all other Settlement Benefits have been paid; (3) Out-of-Pocket Expenses payment, for reimbursement of documented Out-of-Pocket Expenses up to $500.00 for each Settlement Class Member; and (4) Extraordinary Losses payment, for reimbursement of documented Extraordinary Losses up to $2,500.00 for each Settlement Class Member. SA § III.B.1-4.

    1.  **Medical Identity-Theft Monitoring and Protection Services**

        Each Settlement Class Member will be eligible to receive an activation code for two (2) years of Medical Identity-Theft Monitoring and Protection Services, which will be Medical Shield Total offered through CyEx. The expenses associated with procuring the Medical Identity-Theft Monitoring and Protection Services will be paid by the Settlement Administrator from the Net

Settlement Fund. In addition to providing three-bureau credit monitoring, the Medical Identity-Theft Monitoring and Protection Services monitor medical and healthcare data to help determine whether an individual's PHI is at risk or has been exposed to medical fraud, and they include: Healthcare Insurance Plan ID Monitoring, Medicare Beneficiary Identifier ID Monitoring, Medical Record Number Monitoring, International Classification of Disease Monitoring, National Provider Identifier Monitoring, Health Savings Account Monitoring, Dark Web Monitoring, $1,000,000 Identity Theft Insurance, Real-Time Authentication Alerts, High-Risk Transaction Monitoring, Security Freeze Assist, and Victim Assistance. To receive Medical Identity-Theft Monitoring and Protection Services, a Settlement Class Member must submit a valid and timely Claim to the Settlement Administrator electing to receive this Settlement Benefit. SA § III.B.1.

The Medical Identity-Theft Monitoring and Protection Services has a regular retail value of $29.95 per month for each Settlement Class Member electing to receive that Settlement Benefit. *See* Declaration of Jerry Thompson on behalf of CyEx, ¶ 8. Thus, for the two-year term, each subscription is valued at $718.80. Accordingly, this Settlement Benefit confers an additional $115,727.80 of value to the Settlement Class for every one percent (1%) of the Settlement Class that elects to receive it based on the value of the subscription before deducting the cost of securing those services.

### 2. <u>Monetary Payment</u>

In addition to the Medical Identity-Theft Monitoring and Protection Services, each Settlement Class Member will be eligible to receive a Monetary Payment in the form of a check or digital payment from the Settlement Fund for the alleged damages they suffered as a result of having their PII and/or PHI potentially impacted in the Data Incident. The amount of the Monetary Payment will depend on the Claims rate, and the amount will be each Settlement Class Member's *pro rata* share of the Net Settlement Fund after all other Settlement Benefits have been paid, including payment for all Claims for Medical Identity-Theft Monitoring and Protection Services, Out-of-Pocket Expenses, and Extraordinary Losses. To receive a Monetary Payment, a Settlement Class Member must submit a valid and timely Claim Form to the Settlement Administrator. SA § III.B.2.

### 3.    Out-of-Pocket Expenses Payment

In addition to the Medical Identity-Theft Monitoring and Protection Services and Monetary Payment, each Settlement Class Member may submit a Claim for up to $500.00 for reimbursement of Out-of-Pocket Expenses. To receive an Out-of-Pocket Expenses payment, a Settlement Class Member must submit to the Settlement Administrator the following: (i) a valid and timely Claim Form electing to receive the Out-of-Pocket Expenses Settlement Benefit; (ii) an attestation regarding any actual and unreimbursed Out-of-Pocket Expenses; and (iii) Reasonable Documentation that demonstrates the Out-of-Pocket Expenses to be reimbursed. SA § III.B.3.

### 4.    Extraordinary Losses Payment

In addition to the Medical Identity-Theft Monitoring and Protection Services, Monetary Payment, and Out-of-Pocket Expenses payment, each Settlement Class Member may submit a Claim for up to $2,500.00 for reimbursement of Extraordinary Losses.  To receive an Extraordinary Losses payment, a Settlement Class Member must submit to the Settlement Administrator the following: (i) a valid and timely Claim Form electing to receive the Extraordinary Losses Settlement Benefit; (ii) an attestation regarding any actual and unreimbursed Extraordinary Losses; and (iii) Reasonable Documentation that demonstrates the Extraordinary Losses to be reimbursed. SA § III.B.4.

Participating Settlement Class Members who submit Approved Claims will be provided the option to receive any Settlement Payment due to them under the terms of this Agreement via various digital or electronic means.  Settlement Class Members who do not exercise this option will receive their Settlement Payment in the form of a physical check sent via U.S. Mail. SA § III.C.

### C.   The Proposed Notice Program Will Provide the Best Notice Practicable, and the Claim Process is Reasonable

When "a class is certified under Rule 23(b)(3) for purposes of settlement, the Federal Rules require that the district court 'direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1045 (9th Cir. 2019) (quoting Fed. R. Civ. P. 23(c)(2)(B)). "[B]est notice practicable" means "individual notice to all members who can be

1    identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *see*

2    *also Andersen v. Briad Rest. Grp., LLC*, 2022 WL 181262 at *6 (D. Nev. Jan. 19, 2022) (notice

3    satisfactory if it describes the settlement terms in sufficient detail to alert those with adverse

4    viewpoints to investigate and to come forward to be heard). The best notice practicable is that which

5    "is reasonably calculated, under all of the circumstances, to apprise interested parties of the

6    pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent.*

7    *Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

8        Here, the Notice satisfies the foregoing criteria. Notice will be given to Settlement Class

9    Members in multiple ways to best ensure Notice is provided in a reasonable and practical manner.

10   In particular, the Notice methods provided for in this Settlement Agreement consist of (1) the

11   Postcard Notice for all Settlement Class Members for whom Defendants have a mailing address on

12   file in Defendants' business records or for whom a physical address can be identified with

13   reasonable effort of the Settlement Administrator in substantially the same form as <u>Exhibit A</u> which

14   is attached to the Settlement Agreement (SA § II.I); (2) the Long Form Notice posted on the

15   Settlement Website in substantially the same form as <u>Exhibit B</u> which is attached to the Settlement

16   Agreement (*Id.*); and (3) e-mail notice to any Settlement Class Members for whom Defendants have

17   an e-mail address on file in Defendants' business records and for whom Postcard Notice was

18   returned as undeliverable. SA § V.

19       Each form of Notice shall provide a summary of the important details regarding the

20   Settlement, as well as a link to the Settlement Website, set up by the Settlement Administrator,

21   which shall permit Settlement Class Members to access pertinent papers relating to the Action,

22   including the Long Form Notice. The Long Form Notice shall, *inter alia*, (i) specify the Request for

23   Exclusion Deadline and Objection Deadline, and provide the Request for Exclusion procedures and

24   Objection procedures; (ii) contain instructions on how to submit a Claim Form; (iii) note the Claims

25   Deadline; and (iv) note the date, time, and location of the Final Approval Hearing. SA § V.C.  Also,

26   the Settlement Administrator will maintain the toll-free telephone line that Settlement Class

27   members can call for information regarding the Settlement. To facilitate providing Notice, within

28   three (3) business days after the date of the Preliminary Approval Order, Defendants shall provide

1  the Settlement Administrator with the Settlement Class List containing names and mailing and/or e-
2  mail addresses for the Settlement Class Members. SA § V.A-C.

3    In light of the above, the Court should approve the Notice Program, and the Court should
4  also approve the Claim Form and Claim process. The Claim Form is easily understood and may be
5  submitted online via the Settlement Website or U.S. Mail sent to the Settlement Administrator. SA
6  § IV.A. The Settlement Administrator will review all Claim Forms to determine their validity,
7  eligibility, and the type and amount of Settlement Benefits to which the Settlement Class Member
8  may be entitled, and the Claim review process is robust. SA § IV.B.

9    **D.  Request for Exclusion and Objection Procedures**

10    Consistent with the Settlement Agreement, the Long Form Notice specifies the Request for
11  Exclusion procedures and Objection procedures, providing that Settlement Class members who do
12  not wish to participate in the Settlement may submit a Request for Exclusion before the Request for
13  Exclusion Deadline, which is 60 days after the Class Notice Date, or as otherwise ordered by the
14  Court, through the Settlement Website or by mail to the Settlement Administrator. SA § V.D. If a
15  Request for Exclusion is submitted by U.S. Mail, such Request for Exclusion must be in writing and
16  must identify the case name, *Heather Hillbom v. R1 RCM, Inc. and Dignity Health dba Dignity*
17  *Health - St. Rose Dominican Hospital, Rosa de Lima Campus*, Case No. 2:24-cv-00664-JAD-EJY
18  (D. Nev.); state the name, address, and telephone number of the Settlement Class Member seeking
19  exclusion; be physically signed by the person seeking exclusion; and contain a statement to the
20  effect that "I hereby request to be excluded from the proposed Settlement Class in *Heather Hillbom*
21  *v. R1 RCM, Inc. and Dignity Health dba Dignity Health - St. Rose Dominican Hospital, Rosa de*
22  *Lima Campus*, Case No. 2:24-cv-00664-JAD-EJY (D. Nev.)." *Id.* Any Settlement Class member
23  who does not timely submit a Request for Exclusion shall be bound by the Agreement's terms even
24  if that Settlement Class Member does not submit a Claim Form.

25    The Agreement and Long Form Notice also specify how Settlement Class Members may
26  object to the Settlement and/or the Class Counsel's motion for Fee Award and Costs, and Service
27  Awards. SA § V.E. Objections must be in writing and mailed to the Clerk of the Court, and
28  delivered by mail, hand, or overnight delivery service to both Class Counsel, Defendants' Counsel.

*Id*. To be considered by the Court, the objection must be postmarked no later than the Objection Deadline, as specified in the Notice. *Id*. The Objection procedures are in the Agreement, proposed Long Form Notice, and proposed Preliminary Approval Order, and will be available to all Settlement Class Members on the Settlement Website. SA § II.RR. Any objector who fails to object in the manner prescribed herein shall be deemed to have waived his or her objections and forever be barred from making any such objections in the Action or in any other action or proceeding. SA § V.E.

**E. Release**

Settlement Class Members who do not timely submit a Request for Exclusion from the Settlement Class will be bound by the Settlement terms, including the releases discharging the Released Claims against the Released Parties upon the Effective Date of the Agreement and by operation of the Final Approval Order. SA § X.  The Released Claims are narrowly tailored to only claims arising out of or relating to the Data Incident at issue in this Action.

**F. Service Award to Class Representative Plaintiff**

Class Counsel will seek a Service Award of $2,500. The Service Award is comparable to those awarded in other similar settlements. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *1 (N.D. Cal. July 22, 2020), *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022) (approving $2,500 to $7,500 awards in data breach case). Plaintiff, the proposed Class Representative, understands her responsibilities serving as a Class Representative, has participated in this litigation from its inception, spent time providing valuable information to Class Counsel in connection with investigating and developing their claims in this action, reviewed and approved documents including the Complaint and the Settlement Agreement, and dedicated herself to vigorously pursuing litigation on behalf of the putative class, including committing and exposing herself to the possibility of sitting for depositions and testifying publicly at trial. *See* Declaration of Heather Hillbom ¶¶ 6-7.  The Settlement is not contingent on the approval of the requested Service Award, and if the Court declines to approve, in whole or in part, the payment of the requested Service Award, the remaining provisions of the Agreement shall remain in full force and effect. SA § VII.C.

### G. Attorney's Fee Award and Costs

Plaintiff, through Class Counsel, will also file a motion for Fee Award and Costs to be paid from the Settlement Fund, which will be filed at least twenty-one (21) days before the Objection Deadline. SA § VIII. The Parties have no agreement as to the Fee Award and Costs to be paid to Class Counsel, and the Agreement contains no "clear sailing" provision. Plaintiff notes that courts in the Ninth Circuit have found attorneys' fees awards of 1/3 to be reasonable. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of total recovery). The Agreement provides the Settlement Class with Settlement Benefits consisting of not only the $675,000.00 Settlement Sum itself, but also two (2) years of Medical Identity-Theft Monitoring and Protection Services with a retail value of $29.95 per month, conferring $115,727.80 in raw value for every one percent (1%) of the Settlement Class that elects to receive Medical Identity-Theft Monitoring and Protection Services. Thus, even if only one percent (1%) of Settlement Class Members submit a Claim for the Medical Identity-Theft Monitoring and Protection Services, Plaintiff and Class Counsel conservatively estimate that the total value of the Settlement Benefits will be in excess of $790,727.80, before deducting the cost of securing those services. Accordingly, based on the Settlement Sum and in consideration of Class Counsel's conservative estimate of total value of the Settlement Benefits, Class Counsel contemplates seeking an award of attorney's fees up to 1/3 of the value of the Settlement Benefits plus reimbursement of Class Counsel's costs incurred in the Action. The parties did not discuss or negotiate any specific amount of the Fee Award and Costs to be sought by Class Counsel, or the amount of a proposed Service Award for the Class Representative, before reaching an agreement on the relief to be provided to the Settlement Class. In addition, the Settlement is not conditioned upon the Court's approval of the Fee Award and Costs. SA § VIII.D.

## V.  ARGUMENT

### A. The Settlement Merits Preliminary Approval

A class action may not be dismissed, compromised or settled without the approval of the court. Fed. R. Civ. Proc. 23(e). Judicial proceedings under Rule 23 have led to a defined procedure and specific criteria for settlement approval in class action settlements, described in the Manual for

Complex Litigation (Fourth) (Fed. Judicial Center 2004) ("Manual") § 21.63, et seq., including preliminary approval, dissemination of notice to class members, and a fairness hearing. Manual §§ 21.632, 21.633, 21.634. The purpose of the court's preliminary evaluation of the settlement is to decide whether it is within the "range of reasonableness," and thus whether notice to the class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile. *See* 4 Herbert B. Newberg, Newberg on Class Actions § 11.25, et seq., and § 13.64 (4th ed. 2002 and Supp. 2004) ("Newberg"). The court does not have to undertake an in-depth consideration of the relevant factors for final approval.  Instead, the "judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." Manual § 21.632; *see* 5 James Wm. Moore, Moore's Federal Practice—Civil § 23.165[3] (3d ed.).

The decision to approve or reject a proposed settlement "is committed to the sound discretion of   the trial judge[.]" *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998). This discretion is to be exercised "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," which minimizes substantial litigation expenses for both sides and conserves judicial resources. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quotations omitted); *see Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. *See Andersen v. Briad Restaurant Group LLC*, No. 2:14-cv-00786-GMN-BNW, 2022 WL 181262, at *2 (D. Nev. Jan. 19, 2022; citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

Courts in this circuit agree that the two-step process for class settlement approval begins with a low hurdle: "at the preliminary approval stage, court need only determine whether the proposed settlement is within the range of possible approval." *Gamble v. Boyd Gaming Corp.*, No. 2:13-cv-01009-JCM-PAL, 2016 WL 3693743, at *5 (D. Nev. July 11, 2016). To make the preliminary fairness determination, courts may consider several relevant factors, including "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further

litigation; the risk of maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel." *See Hanlon*, 150 F.3d at 1026. Furthermore, courts must give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 1027. Thus, in considering a potential settlement, the court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute and need not engage in a trial on the merits. *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), cert. denied sub nom. *Byrd v. Civil Serv. Comm 'n*, 459 U.S. 1217 (1983).

The question at the preliminary approval stage is whether the court is likely to find the settlement is fair, adequate, and reasonable under Fed. R. Civ. P. 23(e)(2) and considering the Ninth Circuit traditional factors outlined in *Hanlon*. Preliminary approval of the settlement should be granted if, as here, there are no "reservations about the settlement, such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, the need for subclasses, or excessive compensation for attorneys." Manual § 21.632 at 321. Based on these standards, Plaintiff respectfully submits that, for the reasons detailed below, the Court should preliminarily approve the proposed Settlement as fair, reasonable and adequate.

The *Hanlon* factors weigh in favor of granting preliminary approval.[2] First, the negotiations did in fact occur at arm's length facilitated by a neutral third-party mediator, Mr. Bruce Friedman, through JAMS. Second, there was contested motion practice as well as the informal exchange of discovery for purposes of mediation that was sufficient to educate the Parties as to the

---

[2] Rule 23(e)(2) was amended in 2018 to include explicit class settlement approval factors. However, consistent with the Advisory Committee note to that rule amendment, courts in this circuit have made clear the amendment does not entirely displace the traditional Ninth Circuit factors, which overlap with the express Rule 23(e)(2) factors. *See, e.g., McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 n.4 (9th Cir. 2024) (citing Fed. R. Civ. P. 23 Advisory Committee's note to the 2018 amendment). Thus, Plaintiff addresses them all for the Court's benefit.

weaknesses and strengths of the case. As shown by the Declaration of Class Counsel filed concurrently herewith, Class Counsel is highly experienced in this area of the law, having acted as Class Counsel in numerous successful class actions, including specifically data breach and privacy class actions. In addition, the following factors weigh in favor of preliminary approval of the Settlement:

### 1.  The Strength of Plaintiff's Case

When assessing the strength of [the] plaintiff's case, the court does not reach 'any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation.'" *Van Lith v. iHeartMedia + Entm't, Inc.*, No. 1:16-CV-00066-SKO, 2017 WL 1064662, at *11 (E.D. Cal. Mar. 20, 2017) (quoting *Adoma v. Univ. of Phoenix, Inc.*, 913 F.Supp.2d 964, 975 (E.D. Cal. 2012)). The court must "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Adoma*, 913 F.Supp.2d at 975.

While Plaintiff and Class Counsel believe there is evidence from which the Court could ultimately rule in favor of Plaintiff's claims, there are mitigating factors, inherent risks of litigation, and no guarantee if this case moves forward through protracted litigation. Defendants have already argued that it will be difficult for Plaintiff to show damages caused by the Data Incident; indeed, the Parties vigorously briefed this issue, as well as many other issues, in connection with Defendants' pending Motion to Dismiss. Class Counsel Decl. ¶ 11.  As the litigation proceeds, Defendants will also likely argue that there are individualized issues related to the harm resulting from the Data Incident, posing a risk that a class may not be successfully certified if Plaintiff's motion for certification was opposed. *Id.* Where a court determines that a claim may have "some measure of merit," but that it also faces inherent weaknesses, the court should find that the "strength of [p]laintiff's case" factor "weighs in favor" of approval of the settlement. *See Van Lith*, 2017 WL 1064662, at *11.

### 2.  The Risk, Expense, Complexity, and Likely Duration of Further Litigation

In assessing the degree of risk of continued litigation, "the court evaluates the time and cost required." *Adoma*, 913 F.Supp.2d at 976. "[U]nless the settlement is clearly inadequate, its

12

acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id*. (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004)). "The parties . . . save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something that they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624 (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681–82 (1971)).

The risk and expense of continued litigation is plain; absent settlement, the Parties would be required to continue litigation, which would first require Plaintiff to defeat Defendants' pending Motion to Dismiss, and, assuming she were successful, necessarily then involve significant discovery, a contested motion for certification, and other dispositive motions such as a motion for summary judgment and possible appeals. All told, the ultimate recovery might be of no greater value—or of lesser value—than that provided for in the Agreement. Moreover, the process only becomes more complex over a longer time period, as new issues may emerge through discovery. Accordingly, this factor clearly weighs in favor of approval. Class Counsel Decl. ¶ 12; *see, e.g., Barbosa v. Cargill Meat Sols. Corp*., 297 F.R.D. 431, 447 (E.D. Cal. 2013) (concluding that this factor favored approval where "there remained significant procedural hurdles for the putative class to confront, including certification" and "there were significant risks in continued litigation and no guarantee of recovery").

### 3.  The Settlement Benefits and Relief Offered in the Settlement

The relief offered in a settlement is assessed as a whole, "complete package" for overall fairness. *DIRECTV, Inc*., 221 F.R.D. at 527 (quoting *Officers for Justice*, 688 F.2d at 628). Indeed, it is "well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id*. (citing *Linney*, 151 F.3d at 1242).

Here, the Settlement Benefits provided through the $675,000 Settlement Fund include the ability of Settlement Class Members to not only claim two years of Medical Identity-Theft Monitoring and Protection Services, which includes $1,000,000 Identity Theft Insurance, but also

significant monetary relief, including: a Monetary Payment, which will be a *pro rata* share of the Net Settlement Fund after all other Settlement Benefits have been paid; Out-of-Pocket Expenses payment, for reimbursement of documented Out-of-Pocket Expenses up to $500.00 for each Settlement Class Member; and Extraordinary Losses payment, for reimbursement of documented Extraordinary Losses up to $2,500.00 for each Settlement Class Member. SA § III.B.1-4.

This Settlement compares very favorably to the following approved common fund data breach class action settlements from around the country, as the amount of the Settlement Fund ($675,000) alone comes to approximately $41.87 per individual based on approximately 16,120 Settlement Class Members, which is comparable or superior to other data breach class action settlements *(see, e.g., In Re: Banner Health Data Breach Litigation,* No. 2:16-cv-02696-PHX-SRB (D. Ariz. 2020) ($3.07); *Adlouni v. UCLA Health Systems Auxiliary, et al*., No. BC589243 (Cal. Super. Ct. 2019) ($1.67); *In re Experian Data Breach Litigation,* No. 8:15-cv-01592-AG (C.D. Cal. 2019) ($1.47); *In re Anthem, Inc. Data Breach Litigation,* No. 5:15-md-02617-LHK (N.D. Cal. 2017) ($1.39)), even without accounting for the additional settlement value provided of the Medical Identity-Theft Monitoring and Protection Services for each Settlement Class Member electing to receive that Settlement Benefit.

While a larger award is "theoretically possible, 'the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" *Barbosa*, 297 F.R.D. at 447 (*quoting Linney*, 151 F.3d at 1242); *Hanlon*, 150 F.3d at 1027 (the fact that "the settlement could have been better . . . does not mean the settlement presented was not fair, reasonable, or adequate."). Accordingly, this factor weighs in favor of preliminary approval of the Settlement.

### 4.  Arm's Length, Non-Collusive Settlement Negotiations

This circuit puts "a good deal of stock in the product of arms-length, negotiated resolution." *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1027; *Officers for Justice*, 688 F.2d at 625). There is "[a]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011), *supplemented*, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

Here, counsel for the Parties have separately initiated preliminary review and investigation of the applicable law and facts pertaining to the alleged claims, potential defenses thereto, the damages claimed at issue, and potential exposure. The Parties engaged in vigorous, contested motion practice, and exchanged informal discovery as well as mediation briefs. The information provided by Defendants was appropriately targeted at information relevant to the Settlement. Class Counsel Decl. ¶¶ 6, 13; *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("[F]ormal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."); Manual for Complex Litigation (Fourth) § 13.12 (recognizing that the benefits of settlement are diminished if it is postponed until discovery is completed and approving of targeting early discovery at information needed for settlement negotiations). Informal discovery is a recognized method of minimizing the cost, delay, and burden associated with formal discovery. See Manual for Complex Litigation (Fourth) § 11.423.

In addition, the Parties engaged in arm's length negotiations by participating in a full-day mediation session with Mr. Bruce Friedman, whose guidance and experience aided in reaching the Settlement. The adversarial, non-collusive and arm's-length communications between the Parties' counsel considered issues including, but not limited to, the following: (1) certification of a Settlement Class; (2) monetary relief for Settlement Class Members; and (3) medical and credit monitoring services to be purchased for the Settlement Class Members. Since then, the Parties worked on and exchanged multiple drafts of the Settlement Agreement, compared multiple bids from competing settlement administrators and credit monitoring and worked through the process to select the administrator best suited for this Settlement. Class Counsel Decl. ¶ 13. The resulting Settlement is the product of the Parties' arm's length bargaining, which allows for an initial presumption of fairness.

### 5. <u>Experience and Views of Class Counsel and Adequate Representation of the Settlement Class</u>

"In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties." *Van Lith*, 2017 WL

1064662, at *13 (citing *Barbosa*, 297 F.R.D. at 447). "Great weight is accorded to the recommendation of counsel, who are the most closely acquainted with the facts of the underlying litigation." *Id*. (quoting *Adoma*, 913 F. Supp. 2d at 977 (internal citation omitted)). Accordingly, "absent fraud, collusion, or the like," the court "should be hesitant to substitute its own judgment for that of counsel." *Id*. (citing *DIRECTV, Inc*., 221 10 F.R.D. at 528).

Here, Class Counsel has extensive experience in litigating consumer class actions, specifically data breach class actions. Class Counsel Decl. ¶¶ 16-20; Exhibit 2. Class Counsel understood and appreciated the defenses and position of Defendants, but believed Plaintiff would ultimately succeed. Considering the Parties' strongly divergent views, and their awareness of the burdens of proof necessary to establish liability for the claims and the potential challenges to bringing a class certification motion, the Parties were able to negotiate a fair Settlement, taking into account the costs and risks of continued litigation. The Parties have produced a result that they believe to be in their respective best interests. The Parties also have taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation. Plaintiff and Class Counsel also are aware of the burdens of proof necessary to establish liability for the claims asserted in the Action, the defenses thereto, the difficulties in establishing damages for Plaintiff and Settlement Class Members, and the potential challenges to certifying a class where the motion is contested. Class Counsel Decl. ¶¶ 11-12.

### 6.   The Settlement Has No Obvious Deficiencies

Because the Settlement has no obvious deficiencies, preliminary approval is proper. *See Mora v. Cal West Ag Services, Inc*., 2019 WL 2084725, at *3 (E.D. Cal. 2019), *report and recommendation adopted*, 2019 WL 3760402 (E.D. Cal. 2019) (citing Newberg on Class Actions § 13:13 (5th ed. 2014)) ("The purpose of the initial review is to ensure that an appropriate class exists and that the agreement is non-collusive, without obvious deficiencies, and within the range of possible approval as to that class.") (emphasis added). No such obvious deficiencies are present here. The Settlement includes a sizeable amount of monetary relief for distribution to the Settlement Class Members who make claims for a *pro rata* Monetary Payment, reimbursement of Out-of-Pocket Expenses and Extraordinary Losses allegedly due to the Data Incident, and two years of Medical Identity-Theft

1  Monitoring and Protection Services to thwart and remedy any potential future harm that could be

2  suffered by Settlement Class Members resulting from the Data Incident. Class Counsel Decl. ¶ 14.

3

4  **7.  <u>The Proposed Method of Distributing Settlement Benefits and Processing Claims is Reasonable</u>**

5  The distribution plan for the Settlement Fund, including plans to process Claims, are also

6  more than adequate. Plaintiff has identified an experienced Settlement Administrator who will

7  handle Claims processing and distribution of Settlement Benefits to the Settlement Class Members.

8  The Claims process is the most rational and reasonable means for distributing the Settlement

9  Benefits to the Settlement Class Members. Class Counsel Decl. ¶ 15. In addition, the Parties have

10 contemplated the order of distribution from the Settlement Fund, the possibility of *pro rata*

11 reductions of Settlement Payments for Settlement Class Members with Approved Claims, potential

12 redistribution of a subsequent *pro rata* Settlement Payment, and distribution of Residual Funds

13 from the Net Settlement Fund to a Non-Profit Residual Funds Recipient, to be later agreed upon by

14 the Parties and approved by the Court, as *cy pres*. *Id*. The proposed method of distributing the

15 Settlement Benefits is designed to exhaust the Settlement Fund, providing maximum value to the

16 Settlement Class Members, and no portion of the Settlement Fund shall revert or be repaid to

17 Defendants and/or their insurer(s) after the Effective Date. *Id.*; SA §§ F, G, I.

18 Proposed settlements are not judged against a hypothetical or speculative measure of what

19 might have been achieved, as litigation is, by its nature, uncertain, and "the very essence of a

20 settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney*, 151

21 F.3d at 1242. The Settlement achieves a fundamentally fair, adequate, and reasonable resolution of

22 all relevant claims.

23 **8.  <u>The Settlement Agreement Treats Settlement Class Members Equally</u>**

24 The Agreement provides that all Settlement Class Members are eligible to receive two-years

25 of Medical Identity-Theft Monitoring and Protection Services. SA § III.B.1. This is a benefit

26 offered equally to all Settlement Class Members. Additionally, all Settlement Class Members may

27 make a Claim for an Out-of-Pocket Expenses payment and an Extraordinary Losses payment, for

28 reimbursement of documented losses as a result of the Data Incident, as well as for a *pro rata*

1  Monetary Payment. SA § III.B.2-4.  These Settlement Benefits are also all equally offered to all
2  Settlement Class Members.  Accordingly, the Settlement treats all Settlement Class Members
3  equally.

4  ### B.  The Settlement Class Should Be Certified

5  In reviewing a class action settlement, a "district court must assess whether a class exists."
6  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The fundamental question "is not whether .
7  . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the
8  requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). The
9  Settlement Class satisfies the Rule 23(a) and 23(b)(3) requirements for certification and should be
10  certified for settlement purposes.

11  ### 1.  The Settlement Class is Ascertainable

12  Although not specified in Rule 23, courts imply a prerequisite that the proposed class be
13  ascertainable. *See, e.g., Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1302 (D. Nev.
14  2014). "The definition must be precise, objective, and presently ascertainable." *In re Wal-Mart*
15  *Wage & Hour Emp't Practices Litig.*, No. 2:06-cv-00225-PMP-PAL, 2008 WL 3179315, at *20 (D.
16  Nev. June 20, 2008) citation omitted). Ascertainability may be satisfied if it is "administratively
17  feasible" for the court to determine whether a particular individual is a member, though this is not a
18  prerequisite to certification. *Briseno v. ConAgra Foods, Inc.*, 944 F.3d 1121 (9th Cir. 2017).  Here,
19  the Settlement Class is adequately defined and clearly ascertainable because the Settlement Class
20  definition contains sufficient objective criteria to allow an individual to determine whether he or she
21  is a member of the Settlement Class—*i.e.,* whether they received notice from Defendants that their
22  PII and/or PHI was potentially impacted in the Data Incident. SA § II.L. In addition, Defendants
23  have within their possession the identities of the individuals whose PII and/or PHI was potentially
24  impacted in the Data Incident and who were sent notice of the Data Incident by Defendants (*i.e.,* the
25  Settlement Class List). Accordingly, the ascertainability prerequisite is satisfied.

26  ### 2.  The Settlement Class is Numerous

27  Rule 23(a)(1) requires that a class include so many members that joinder of all would be
28  impracticable. "Impracticability does not mean 'impossibility,' but only the difficulty or

18

1  inconvenience of joining all members of the class.'" *Harris v. Palm Springs Alpine Estates, Inc*.,

2  329 F.2d 909, 913–14 (9th Cir. 1964) (citation omitted). Generally, numerosity is satisfied when the

3  class exceeds 40 members. *Andersen v. Briad Restaurant Group, LLC*, 333 F.R.D. 194, 202 (D.

4  Nev. 2019) Navarro, J.). Here, the joinder of thousands of Settlement Class Members would

5  certainly be impracticable, satisfying numerosity.

6      **3.    There are Common Questions of Law and Fact**

7      Rule 23(a)(2) requires a showing that there are questions of law or fact common to the

8  class. Commonality is satisfied where the plaintiffs assert claims that "depend upon a common

9  contention" that is "of such a nature that it is capable of class-wide resolution—which means that

10  determination of its truth or falsity will resolve an issue that is central to the validity of each one of

11  the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Commonality is

12  a permissive requirement, and "not all questions of fact and law need be common to satisfy the

13  rule." *Hanlon*, 150 F.3d at 1019. The "existence of shared legal issues with divergent factual

14  predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies

15  within the class." *Id.* at 1019–20. A single common question will do. *Andersen*, 333 F.R.D. at 203.

16      Courts in this circuit have previously addressed this requirement in the context of data

17  breach class actions and found it satisfied. *See, e.g., In re MGM Int'l Resorts Data Breach

18  Litigation*, No. 2:20-cv-00376 (D. Nev. 2025);  *Sanguinetti, et al. v. Nevada Restaurant Services

19  Inc*., No. 2:21-cv-01768 (D. Nev.); *In re Eureka Casino Breach Litig.,* No. 2:23-cv-00276 (D.

20  Nev.); *In re PostMeds, Inc. Data Breach Litig*., No. 23-cv-05710-HSG, 2024 WL 4894293, at *2

21  (N.D. Cal. Nov. 26, 2024) (commonality satisfied because claims turn on whether defendant had

22  legal duty to use reasonable security measures to protect class members' personal information,

23  whether that duty was breached, and whether defendant's data security was adequate to protect

24  personal information). Here, as in other data breach cases, the claims turn on whether, at the time of

25  the Data Incident, Defendants had reasonable security measures in place to protect the Settlement

26  Class Members' PII and/or PHI. That inquiry can be fairly resolved for all Settlement Class

27  Members because it revolves around evidence that does not vary between Settlement Class

28  Members, at least for purposes of the Settlement. Indeed, the Data Incident potentially impacted

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**

1   each Settlement Class Member's PII and/or PHI.

2           **4.   Plaintiff's Claims are Typical of the Settlement Class**

3           The commonality and typicality analyses often overlap—both focus on whether a sufficient

4   nexus exists between the legal claims of the named class representatives and those of individual

5   class members to warrant class certification. *Hashemi v. Bosley, Inc*., No. CV 21-946 PSG (RAOx),

6   2022 WL 2155117, at *3 (C.D. Cal. Feb. 22, 2022) (citing *Gen. Tel. Co. Sw. v. Falcon*, 457 U.S.

7   147, 157 n.13 (1982)). "The test of typicality 'is whether other members have the same or similar

8   injury, whether the action is based on conduct which is not unique to the named plaintiffs, and

9   whether other class members have been injured by the same course of conduct.'" *Ellis v. Costco*

10  *Wholesale Corp*., 657 F.3d 970, 984 (9th Cir. 2011) (citation omitted). *See also Andersen*, 333

11  F.R.D. at 203 (same). "Typicality refers to the nature of the claim or defense of the class

12  representative, and not to the specific facts from which it arose or the relief sought." *Id*. "Under the

13  'permissive standards' of Rule 23(a)(3), 'representative claims are 'typical' if they are reasonably

14  co-extensive with those of absent class members; they need not be substantially identical.'" *Hanlon*,

15  150 F.3d at 1020. Here, Plaintiff's interests are aligned with the Settlement Class's interests because

16  their respective PII and/or PHI was potentially impacted in the same Data Incident. Accordingly,

17  Plaintiff's claims against Defendants are identical to the Settlement Class's claims.

18          **5.   Plaintiff and Class Counsel Are Able to Adequately Protect the Interests of the**
19          **Settlement Class**

20          "'To satisfy constitutional due process concerns, absent class members must be afforded

21  adequate representation before entry of a judgment which binds them.'" *Andersen*, 333 F.R.D. at

22  204 (citation omitted). Fed. R. Civ. P. 23(a)(4) requires the representative parties "fairly and

23  adequately protect the interests of the class." This determination turns on two questions: "(1) [d]o

24  the representative plaintiffs and their counsel have any conflicts of interest with other class

25  members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously

26  on behalf of the class?" *Staton v. Boeing Co*., 327 F.3d 938, 957 (9th Cir. 2003); *Andersen*, 333

27  F.R.D. at 204. Here, both components are met.

28

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

Like all Settlement Class Members, Plaintiff's claims against Defendants arise from the Data Incident. Thus, litigation of Plaintiff's claims would necessarily involve adjudication of the same issues of law and fact as the claims of the Settlement Class as a whole. Thus, Plaintiff and the Settlement Class she seeks to represent have the same interests in recovering damages and relief in this Action. Further, Plaintiff has also diligently and adequately prosecuted the Action with the assistance of Class Counsel by, among other things, reviewing filings, promptly providing documents and information to Class Counsel, and acting in the best interest of the Settlement Class. Plaintiff's willingness to serve as Class Representative demonstrates her serious commitment to bringing about the best results for the Settlement Class.  Class Counsel Decl. ¶ 16.

Also, Class Counsel are adequate to represent the Settlement Class's interests and should be appointed Class Counsel. In retaining Class Counsel, Plaintiff retained attorneys who are "qualified, experienced and able to conduct the proposed litigation." *Hester v. Vision Airlines, Inc*., No. 2:09-cv-00117, 2009 WL 4893185, at *5 (D. Nev. Dec. 16, 2009) (internal quotation omitted). With their extensive experience in class actions and other complex litigation, including data breach litigation, there can be no doubt Class Counsel are adequate to represent the Settlement Class in this Action. *See* Class Counsel Decl. ¶¶ 16-20; Exhibit 2.

Class Counsel have litigated this Action from its inception, including, *inter alia*, investigating evaluating the claims, preparing comprehensive pleadings, pursuing informal discovery, responding to Defendants' motion to dismiss, and participating in a mediation that ultimately resulted in this Settlement. *See* Class Counsel Decl. ¶¶ 6, 8, 13. Accordingly, Plaintiff and Class Counsel will adequately protect the Settlement Class.

**6.  <u>The Settlement Also Meets the Rule 23(b)(3) Requirements</u>**

This Action is also well-suited for certification under Rule 23(b)(3) because questions common to the Settlement Class Members predominate over questions affecting only individual Class Members, and class action treatment provides the best method for the fair and efficient resolution of the Settlement Class Members' claims. Defendants do not oppose class certification for the purposes of effectuating the proposed Settlement. When addressing the propriety of certification, the Court should note that, in light of the Settlement, trial will now be unnecessary,

and that the manageability of the Settlement Class for trial purposes and need to calculate damages is not relevant to the Court's inquiry. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Hanlon*, 150 F.3d at 1021–23.

### a) Predominance is Satisfied

A class action is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," there is clear justification for class treatment. *Local Joint Executive Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem*, 521 U.S. at 622). If common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then "there is clear justification for handling the dispute on a representative rather than on an individual basis," and the predominance test is satisfied. *Id.* at 1022. There is no definitive test for determining whether common issues predominate, however, in general, predominance is met when there exists generalized evidence which proves or disproves an [issue or] element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position. The main concern is "the balance between individual and common issues." *In re Wells Fargo Home Mortg.*, 571 F.3d 953, 959 (9th Cir. 2009).

Here, common issues predominate because, as explained in the commonality section above, both Plaintiff and Settlement Class Members' claims turn on whether Defendants adequately protected the Settlement Class Members' PII and/or PHI. Settlement Class Members, including Plaintiff, would seek to prove that Defendants' allegedly inadequate data security measures resulted in the unauthorized disclosure of the PII and/or PHI of Plaintiff and Settlement Class Members, resulting in injuries fairly traceable to Defendants' conduct, omissions, or uniform policies and procedures similarly affecting Plaintiff and Settlement Class Members alike.

**b) <u>Class Treatment is Superior</u>**

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Rule 23(b)(3)'s non-exclusive factors are: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action."

All of these factors are present here as it is clear that managing these disputes in a single class action before a single judge is preferable and more manageable than to require thousands of consumers to each bring individual actions where the attorney's fees or litigation costs alone would likely exceed the value of any potential recovery. The more likely outcome in that situation would be the absence of any actions and no remedy being provided to any Settlement Class Members.

**C. <u>The Court Should Appoint the Plaintiff as the Class Representative, Plaintiff's Counsel as Class Counsel, and Simpluris, Inc. the Settlement Administrator</u>**

As discussed above, Plaintiff is an adequate Class Representative because she has actively pursued this litigation on behalf of the Settlement Class Members and shares a common interest in obtaining a suitable remedy for the Data Incident. Plaintiff has no conflicts, and Plaintiff has, with the assistance of Class Counsel, litigated this case and diligently reviewed the Settlement terms, showing her dedication to obtaining the best outcome for the Settlement Class. Class Counsel Decl. ¶ 16. Plaintiff's willingness to serve as Class Representative demonstrates her serious commitment to bringing about the best results possible for the Settlement Class. *Id*.

Also, Class Counsel are adequate to represent the Settlement Class's interests and should be appointed as Class Counsel. In retaining this firm, Plaintiff employed counsel who are "qualified, experienced and able to conduct the proposed litigation." *Hester v. Vision Airlines, Inc*., No. 2:09-cv-00117, 2009 WL 4893185, at *5 (D. Nev. Dec. 16, 2009) (internal quotation). With a litany of experience in class actions and other complex litigation, including data breach litigation, that

proposed Class Counsel bring, there can be no doubt that they are adequate to represent the Settlement Class in this Action. Class Counsel Decl. ¶¶ 16-20; Exhibit 2.

Lastly, subject to Court approval, the Parties have agreed Simpluris, Inc. ("Simpluris") should be the Settlement Administrator in this Action. Simpluris provides administrative services in class action litigation nationwide and has extensive experience in administering consumer protection and privacy settlements. *See* Decl. of Jacob J. Kamenir on behalf of Simpluris, ¶¶ 3-4.

**D. <u>Schedule of Post-Settlement Events and Scheduling a Final Approval Hearing</u>**

Consistent with the Settlement Agreement, Plaintiff proposes the schedule below following the Court's Preliminary Approval Order.

| Event | Deadline |
| --- | --- |
| Defendants to provide Settlement Class List to Settlement Administrator | 3 business days after the Preliminary Approval Order |
| Defendants to serve, or cause to be served, CAFA Notice, per 28 U.S.C. § 1715(b) | 10 days after the Preliminary Approval Order |
| Settlement Administrator to complete the issuance of Notice to Settlement Class Members | 30 days after the Preliminary Approval Order |
| Motion for Fee Award and Costs and Service Award to Be Filed by Class Counsel | At least 21 days prior to the Objection Deadline |
| Request for Exclusion and Objection Deadlines | 60 days after the Class Notice Date |
| Settlement Administrator to provides Parties with list of timely, valid Requests for Exclusion | 5 days after the Request for Exclusion Deadline |
| Claims Deadline | 90 days after Class Notice Date |
| Motion for Final Approval to be filed by Class Counsel | At least 14 days prior to Final Approval Hearing |
| Final Approval Hearing | No Earlier Than 120 Days After the Preliminary Approval Order |

///

///

///

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

## VI.    CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Court enter an order preliminarily approving the Settlement and certifying the Settlement Class for settlement purposes.

DATED this 13th day of June 2025.

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: */s/ Mona Amini*
Abbas Kazerounian, Esq. (*pro hac vice*)
Mona Amini, Esq. (Nevada Bar No. 15381)
Gustavo Ponce, Esq. (Nevada Bar No. 15084)
6940 S. Cimarron Road, Suite 210
Las Vegas, Nevada 89113
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523
ak@kazlg.com
gustavo@kazlg.com
mona@kazlg.com

*Attorneys for Plaintiff*

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY pursuant to Rule 5 of the Federal Rules of Civil Procedure that on June 13, 2025, the foregoing document was served via CM/ECF to all parties appearing in this case.

**KAZEROUNI LAW GROUP, APC**

By: */s/ Mona Amini*
    Mona Amini, Esq.

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL