Mona Amini, Esq.
Nevada Bar No. 15381
Gustavo Ponce, Esq.
Nevada Bar No. 15084
**KAZEROUNI LAW GROUP, APC**
6940 S. Cimarron Road, Suite 210
Las Vegas, Nevada 89113
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523
mona@kazlg.com
gustavo@kazlg.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| HEATHER HILLBOM, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  vs.<br><br>R1 RCM, INC.; and DIGNITY HEALTH d/b/a DIGNITY HEALTH - ST. ROSE DOMINICAN HOSPITAL, ROSE DE LIMA CAMPUS,<br><br>     Defendants. | Case No.: 2:24-cv-00664-JAD-EJY<br><br>**PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARD** |

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

I.    INTRODUCTION .................................................................................................... 1

II.   BACKGROUND ...................................................................................................... 2

    A.    Factual Background ....................................................................................... 2

    B.    Procedural History ......................................................................................... 2

    C.    Settlement Negotiations and Mediation ...................................................... 3

    D.    Preliminary Approval and Settlement Administration ................................. 3

III.  ARGUMENT ............................................................................................................ 4

    A.    The Requested Fee Award is Fair, Reasonable, and Justified. .................... 4

        1.    Class Counsel Achieved Excellent Results for the Settlement Class ............. 6

        2.    The Requested Fee Award is Reasonable Under the Lodestar Approach ....... 9

            a)    The Number of Hours Claimed by Class Counsel Are Reasonable .... 9

            b)    Class Counsel's Hourly Rates Are Reasonable ................................. 10

            c)    A Positive Multiplier is Justified ....................................................... 11

        3.    The Requested Fee Award is Reasonable Under the Percentage Method ..... 13

        4.    The Requested Fee Award is Comparable to the Fees Awarded in Other Cases ............................................................................................................... 14

        5.    The Requested Fee Award is Not the Product of Collusion ......................... 15

    B.    Class Counsel are Entitled to Reimbursement of Litigation Costs. ........................... 17

    C.    The Court Should Approve the Service Award for the Class Representative ........... 17

IV.   CONCLUSION ......................................................................................................... 18

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Pursuant to Fed. R. Civ. P. Rule 23, Plaintiff Heather Hillbom ("Plaintiff"), individually and on behalf of the Settlement Class,[1] hereby moves this Court for an award of $225,000 in attorneys' fees, reimbursement of $11,674.14 in reasonable costs and expenses necessary to the prosecution of this action, and a Service Award in the amount of $2,500 to the Class Representative in accordance with the preliminary approved Settlement Agreement.

Plaintiff and Class Counsel zealously litigated the instant action and successfully obtained a favorable settlement providing real and substantial benefits for the Settlement Class Members. While the Settlement establishes a non-reversionary $675,000.00 cash Settlement Fund, which will be used to provide participating Settlement Class Members with Monetary Payments, reimbursement for Out-of-Pocket Expenses and Extraordinary Losses, the costs of providing the Medical Identity-Theft Monitoring and Protection Services as well as all Administrative Expenses, any Court-approved Fee Award and Costs and Service Award, the Settlement delivers value to the Settlement Class Members far beyond that amount, considering the additional value of the Medical Identity-Theft Monitoring and Protection Services.[2] Based on these benefits, Class Counsel conservatively estimate the total value of the  Settlement Benefits presently exceeds $756,524.80 considering the 116 Medical Identity-Theft Monitoring and Protection Services claims received as of September 19, 2025.  This value will continue to rise until the November 11, 2025 Claims Deadline and all claims are processed by the Settlement Administrator.

The requested award of attorneys' fees amounts to just 29.7% of the present total settlement value of $756,524.80.  As detailed below and in Class Counsel's. accompanying declaration, Class Counsel devoted 201.2 hours and incurred a lodestar of $150,628.00 to date (which will continue to

---

[1]    Capitalized terms not explicitly defined herein are defined as stated in the Settlement Agreement.

[2]    The Medical Identity-Theft Monitoring and Protection Services provided through CyEx has a regular retail value of $29.95 per month for each Settlement Class Member electing to receive that Settlement Benefit, making each two-year term valued at $718.80. this Settlement Benefit confers an additional $115,727.80 of value to the Settlement Class for every one percent (1%) of the Settlement Class that elects to receive it based on the value of the subscription before deducting the cost of securing those services.

1 increase through the date of the Final Approval Hearing) to secure the Settlement's relief for the

2 Settlement Class.  The requested fee award currently represents a lodestar multiplier of 1.49, which

3 Class Counsel submits is fair and reasonable in light of the significant risks Class Counsel faced.

4 However, Class Counsel notes that this multiplier will decrease as Class Counsel's lodestar

5 increases with the additional motion practice and work needed through the date of the Final

6 Approval Hearing. Class Counsel will devote substantial additional time as they work to secure

7 final approval of the Settlement, litigate any appeals, continue to oversee administration of the

8 Settlement, and communicate with and assist Settlement Class Members through the claims process.

9 Class Counsel respectfully submit that the requested awards fairly compensate Class

10 Counsel for their substantial efforts and excellent results, and for the Class Representatives' service

11 on behalf of the Class.

12 **II.    BACKGROUND**

13 **A.  <u>Factual Background</u>**

14 This data breach class action arises out of Defendants' alleged failure to properly secure and

15 safeguard the personally identifying information ("PII") and personal health information ("PHI") of

16 Plaintiff and approximately 16,120 Settlement Class Members, including but not limited to their

17 names, Social Security numbers, dates of birth, addresses, contact information, medical record

18 numbers, patient account numbers, medical information, and location of services. *See* Plaintiff's

19 Class Action Complaint ("Complaint") ¶ 1.

20 On or around January 30, 2023, an unauthorized third party may have accessed the PII

21 and/or PHI of Dignity Health's current and former patients, including Plaintiff and the Settlement

22 Class Members, by exploiting a zero-day vulnerability within the GoAnywhere file transfer

23 platform (the "Data Incident"). *Id*. ¶¶ 3, 46, 17. After learning of the Data Incident, Defendants

24 undertook an investigation into the matter and began notifying Plaintiff and Settlement Class

25 Members of the Data Incident in March 2024. *Id*. ¶¶ 17, 48, 50.

26 **B.  <u>Procedural History</u>**

27 On April 5, 2024, Plaintiff filed the Complaint against Defendants in the U.S. District Court

28 for the District of Nevada initiating this Action. Subsequently, Defendants moved to dismiss the

Complaint on August 27, 2024, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, (1) challenging Plaintiff's standing to bring her claims and to seek injunctive relief, and (2) seeking dismissal of the Complaint for an alleged failure to state a claim for which relief can be granted. After conclusion of the parties' briefing related to Defendants' Motion to Dismiss, the Parties sought a stay of the Action, including deferral of the hearing on Defendants' Motion to Dismiss, pending the Parties' participation in mediation.

### C.  Settlement Negotiations and Mediation

On January 29, 2025, the Parties participated in a full-day mediation presided over by a well-respected neutral, Bruce Friedman, Esq. of JAMS.  In advance of the mediation, Plaintiff propounded informal discovery requests and, through the provision of informal discovery and the Parties' exchange of detailed mediation briefs outlining their positions with respect to liability, damages, and settlement-related issues, Plaintiff received additional information regarding the cause and the scope of the Data Incident and was able to be well-informed about and to evaluate the merits of Defendants' position. As a result of the Parties' arm's-length bargaining at the mediation, and the mediator's proposal provided by Mr. Friedman, to avoid the risk and expense of protracted litigation, the Parties reached a settlement.  Over the months following the mediation, the Parties engaged in further negotiation efforts, and exchanged multiple drafts of the Settlement Agreement and its supporting exhibits, and resolved any disagreements to ultimately arrive at the terms as memorialized in the Settlement Agreement, subject to the Court-approval process set forth therein. As demonstrated below, the Settlement provides significant relief for the Settlement Class, including a non-reversionary cash Settlement Fund of $675,000.00.

### D.  Preliminary Approval and Settlement Administration

On June 13, 2025, Plaintiff filed a Motion for Preliminary Approval of the Settlement (Dkt. 36). On July 14, 2025, the Court held a hearing and granted Plaintiff's Motion for Preliminary Approval of the Settlement (Dkt. 30) finding the Settlement within the range of reasonableness necessary to grant preliminary approval under Fed. R. Civ. P. 23(e) and enter the Preliminary Approval Order (i) granting preliminary approval of the Settlement; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) appointing the Plaintiff as Class Representative; (iv)

1  appointing Abbas Kazerounian, Mona Amini, and Gustavo Ponce as Class Counsel for the
2  Settlement Class; (v) approving the form of the Notice and the Notice Program; (vi) approving the
3  Claim Form and the Claims process; (vii) appointing Simpluris, Inc. as the Settlement
4  Administrator; (viii) establishing the Request for Exclusion and Objection procedures and
5  deadlines; and (ix) scheduling a Final Approval Hearing for November 14, 2025, at which time the
6  Court will decide whether to grant final approval of the Settlement and whether to grant Class
7  Counsel's Motion for Fee Award and Costs and a Service Award to Plaintiff.

8      Since the Preliminary Approval Order was entered, Class Counsel has worked with the
9  Settlement Administrator to implement the notice and claims process and ensure the notice has
10 been disseminated to Settlement Class Members and the claims process has gone smoothly for
11 Settlement Class Members. *See* Declaration of Mona Amini ("Class Counsel Decl.") ¶ 13.
12 Class Counsel reviewed and audited the Settlement Website, reviewed weekly reports from the
13 Settlement Administrator regarding the progress of the notice and claims process and conferred
14 with the Settlement Administrator, and responded to inquiries from Settlement Class Members. *Id*.
15 Class Counsel will continue to dedicate significant efforts through Final Approval to oversee
16 settlement administration, work with and communicate with Settlement Class Members, the
17 Settlement Administrator, and others, move for final approval of the Settlement, ensure Settlement
18 Class Members receive the Settlement Benefits, and see the Settlement through to the end. *Id*. ¶ 15.

19 **III.    ARGUMENT**

20     **A.    <u>The Requested Fee Award is Fair, Reasonable, and Justified.</u>**

21     District courts may award attorneys' fees and costs to a prevailing plaintiff where "'the
22 successful litigants have created a common fund for recovery or extended substantial benefit to the
23 class.'" *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (quoting
24 *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 275 (1975)). Where counsel seeks fees
25 from a common fund, courts have discretion to employ either the percentage-of-fund or the lodestar-
26 multiplier method to determine whether the fee request is reasonable. *See In re Mercury Interactive*
27 *Corp.*, 618 F.3d 988, 992 (9th Cir. 2010); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–49 (9th
28 Cir. 2002); *Hanlon v. Chrysler Group*, 150 F.3d 1011, 1029 (9th Cir. 1998), *overruled on other*

4

1 | *grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Regardless of the chosen method,

2 | courts must award attorneys' fees based on an evaluation of "all of the circumstances of the case."

3 | *Vizcaino*, 290 F.3d at 1048.

4 |      Under the "percentage-of-the-fund" method, the "court simply awards the attorneys a

5 | percentage of the fund sufficient to provide class counsel with a reasonable fee." *Hanlon*, 150 F.3d

6 | at 1029. Most courts have found the percentage approach superior in cases with a common-fund

7 | recovery because it (i) parallels the use of percentage-based contingency fee contracts; (ii) aligns the

8 | lawyers' interests with that of the class in achieving the maximum possible recovery; and (iii)

9 | reduces the burden on the court by eliminating the detailed and time-consuming lodestar analysis.

10 | *See In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374–77 (N.D. Cal. 1989); *Vinh Nguyen v.*

11 | *Radient Pharm. Corp.*, No. 11-cv-00406, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("There

12 | are significant benefits to the percentage approach, including consistency with contingency fee

13 | calculations in the private market, aligning the lawyers' interests with achieving the highest award

14 | for the class members, and reducing the burden on the courts that a complex lodestar calculation

15 | requires."); *Lopez v. Youngblood*, 2011 WL 10483569, at *3 (E.D. Cal. Sep. 2, 2011) (in common

16 | fund cases, the "percentage of the available fund analysis is the preferred approach in class action

17 | fee requests").

18 |      Indeed, "[t]here are significant benefits to the percentage approach, including consistency

19 | with contingency fee calculations in the private market," and "reducing the burden on the courts that

20 | a complex lodestar calculation requires." *Tait v. BSH Home Appliances Corp.*, 2015 WL 4537463,

21 | at *11 (C.D. Cal. July 27, 2015). And calculating attorneys' fees as a percentage-of-the-fund "aligns

22 | the interests of the counsel and the class, i.e., class counsel directly benefit from increasing the size

23 | of the class fund and working in the most efficient manner." *Lopez*, 2011 WL 10483569, at *3.

24 |      The lodestar method, in contrast, "is typically used when the relief obtained is 'not easily

25 | monetized.'" *Ahmed v. HSBC Bank United States*, 2019 WL 13027266, at *5–6 (C.D. Cal. Dec. 30,

26 | 2019). It also "inadequately responds to the problem of risk." *See In re Washington Pub. Power*

27 | *Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) (without the percentage-of-the-fund

28 | method of calculating fees, "very few lawyers could take on the representation of a class client

KAZEROUNI
LAW GROUP, APC

given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." (citation and internal quotation marks omitted)). And it discourages early resolution. *Laffitte v. Robert Half Internat. Inc.,* 1 Cal. 5th 480, 494 (2016) (quoting the American Law Institute's findings that the lodestar method creates a "financial incentive to extend the litigation"). So, the lodestar method is especially disfavored in evaluating fee requests where class counsel achieves a settlement that provides significant pecuniary benefits to the class early in the litigation. *See Rankin v. Am. Greetings, Inc*., No. 2:10-CV-01831-GGH, 2011 WL 13239039, at *2 (E.D. Cal. July 6, 2011) (explaining that "district courts within the Ninth Circuit have recognized that" even a "lodestar cross check need not be performed where plaintiff's counsel achieves a significant result through an early settlement").

Whether applying the lodestar or percentage method, "the most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see Bluetooth*, 654 F.3d at 942 ("Foremost among these considerations . . . is the benefit obtained for the class."); Federal Judicial Center, Manual for Complex Litigation ("MCL"), § 27.71, 336 (4th ed. 2004) ("[The] fundamental focus is on the result actually achieved for class members."). Under either approach, the requested fee award is reasonable.

**1.  Class Counsel Achieved Excellent Results for the Settlement Class**

The Settlement Benefits provided through the $675,000.00 Settlement Fund include the ability of Settlement Class Members to not only claim two years of Medical Identity-Theft Monitoring and Protection Services, which includes $1,000,000 Identity Theft Insurance, but also significant monetary relief, including: a Monetary Payment, which will be a *pro rata* share of the Net Settlement Fund after all other Settlement Benefits have been paid; payment for reimbursement of documented Out-of-Pocket Expenses up to $500.00 for each Settlement Class Member; reimbursement of documented Extraordinary Losses up to $2,500.00 for each Settlement Class Member. SA § III.B.1-4.

This Settlement compares very favorably to the following approved common fund data breach class action settlements from around the country, as the amount of the Settlement Fund ($675,000.00) alone comes to approximately $41.87 per individual based on approximately 16,120

Settlement Class Members, which is comparable or superior to other data breach class action settlements *(see, e.g., In Re: Banner Health Data Breach Litigation,* No. 2:16-cv-02696-PHX-SRB (D. Ariz. 2020) ($3.07); *Adlouni v. UCLA Health Systems Auxiliary, et al*., No. BC589243 (Cal. Super. Ct. 2019) ($1.67); *In re Experian Data Breach Litigation,* No. 8:15-cv-01592-AG (C.D. Cal. 2019) ($1.47); *In re Anthem, Inc. Data Breach Litigation,* No. 5:15-md-02617-LHK (N.D. Cal. 2017) ($1.39)), even without accounting for the additional settlement value provided of the Medical Identity-Theft Monitoring and Protection Services for each Settlement Class Member electing to receive that Settlement Benefit.

The Medical Identity-Theft Monitoring and Protection Services offered through the Settlement presents a tangible, and valuable, benefit to Settlement Class Members and protects them from the consequences of the Data Incident going forward. These services are a critical component of the Settlement designed to address the reality that Out-of-Pocket Expenses or Extraordinary Losses may manifest at a later time.

The Medical Identity-Theft Monitoring and Protection Services not only provides three-bureau credit monitoring, but also monitors medical and healthcare data to help determine whether an individual's PHI is at risk or has been exposed to medical fraud, and they include: Healthcare Insurance Plan ID Monitoring, Medicare Beneficiary Identifier ID Monitoring, Medical Record Number Monitoring, International Classification of Disease Monitoring, National Provider Identifier Monitoring, Health Savings Account Monitoring, Dark Web Monitoring, $1,000,000 Identity Theft Insurance, Real-Time Authentication Alerts, High-Risk Transaction Monitoring, Security Freeze Assist, and Victim Assistance. To receive Medical Identity-Theft Monitoring and Protection Services, a Settlement Class Member must submit a valid and timely Claim to the Settlement Administrator electing to receive this Settlement Benefit. SA § III.B.1. The Medical Identity-Theft Monitoring and Protection Services has a regular retail value of $29.95 per month for each Settlement Class Member electing to receive that Settlement Benefit. *See* Dkt. 36-3 (Declaration of Jerry Thompson on behalf of CyEx) ¶ 8. Thus, for the two-year term, each subscription is valued at $718.80. Accordingly, for every one percent (1%) of the Settlement Class that elects to receive this benefit, this Settlement Benefit confers an additional $115,727.80 of

KAZEROUNI
LAW GROUP, APC

value to the Settlement Class based on the retail value of the subscription before deducting the cost of securing those services.

Furthermore, the retail price of these services, rather than cost, is the proper gauge of value. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800, 2020 WL 256132, at *38 (N.D. Ga. Mar. 17, 2020), aff'd as to attorneys' fees, 999 F.3d 1247 (11th Cir. 2021) ("[T]he record shows that the high-quality credit monitoring offered here is more valuable than the free or low-cost services typically available," and "courts have often recognized the benefit of credit monitoring, use its retail cost as evidence of value, and consider that value in awarding fees.") (collecting cases); *In re Experian Data Breach Litig.*, No. 8:15-cv-01592-AG-DFM, Dkt. 322 at 8–10 (C.D. Cal. May 10, 2019); *In re Banner Health Data Breach Litig.*, 2020 WL 12574227, at *5 (D. Ariz. Apr. 21, 2020) (finding two-years of credit-monitoring directly on par with "comparable products that other courts have endorsed in data breach settlements approved in several other major data breach cases."); *In re the Home Depot, Inc., Customer Data Sec. breach Litig.*, 2016 WL 11299474, at *4 (N.D. Ga. Aug. 23, 2016) (granting final approval, noting "18 months identity monitoring services also confers a substantial benefit to the Settlement Class"); *In re loanDepot Data Breach Litigation*, No. 8:24-cv-00136-DOC-JDE (C.D. Cal. Aug. 25, 2025) (granting final approval of data breach class action settlement and Class Counsel's requested $7.5 million fee award where the Settlement provided a $25 million Settlement Fund and the Total Settlement Value was in excess of $98 million after considering the additional value of the Financial Monitoring and Identity Theft Services and the defendant's business practice changes.)

The Claims Deadline is November 11, 2025. Thus, Settlement Class Members still have nearly two more months after the initial filing of this motion to submit a claim for Settlement Benefits. As of September 19, 2025, 175 claims have been submitted, representing approximately 1.1% of the Settlement Class. Of the 175 claims received thus far, 116 Settlement Class Members have elected to receive Medical Identity-Theft Monitoring and Protection Services. will continue to rise until the November 11, 2025 Claims Deadline and all claims are processed by the Settlement Administrator. Final numbers will be provided after expiration of the Claims Deadline in advance of the Final Approval Hearing. However, based on these preliminary figures, the Medical Identity-

Theft Monitoring and Protection Services already contributes an additional value of $81,524.80 (after deducting the cost of providing such services). Adding this additional value to the Settlement Fund ($675,000.00) results in a current total Settlement value presently in excess of $756,524.80, which is expected to continue to increase as additional claims are submitted by Settlement Class Members over the next two months.

### 2.  The Requested Fee Award is Reasonable Under the Lodestar Approach

Application of the lodestar method here confirms the propriety of Class Counsel's fee request. Under the lodestar method, "the district court 'multiplies a reasonable number of hours by a reasonable hourly rate.'" *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016) (quoting *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002)). The lodestar amount may then be adjusted by a risk multiplier, and/or "a multiplier that reflects 'a host of "reasonableness" factors.'" *Stetson*, 821 F.3d at 1166 (quoting *In re Bluetooth*, 654 F.3d at 941–42).

### a)  The Number of Hours Claimed by Class Counsel Are Reasonable

Class Counsel devoted 201.2 hours on this litigation to date, incurring a lodestar of $150,628.00. Class Counsel Decl. ¶¶ 18-19. Class Counsel maintained this time in contemporaneous, detailed time records billed in 6-minute increments. *Id.* ¶ 16. Class Counsel reviewed the time submissions, audited them, and reduced hours that appeared duplicative, excessive, or unnecessary, and eliminated time billed by administrative staff. *Id*.

The work performed by Class Counsel to date includes (1) developing case strategy, (2) interviewing, analyzing, and vetting potential plaintiffs, (3) extensively researching and filing the Complaint, (4) undertaking substantial investigation of the Data Incident, (5) reviewing, researching, and briefing related to Defendants' motion to dismiss Plaintiff's Complaint (6) informally exchanging information prior to mediation and preparing and exchanging extensive mediation briefs, (7) attending a full-day private mediation, (8) drafting and negotiating the Settlement Agreement, Notice documents, and other exhibits, (9) obtaining and comparing bids from settlement administrators and credit monitoring service providers, and (10) drafting the preliminary approval motion papers, attending the preliminary approval hearing, and securing preliminary approval of the Settlement. Class Counsel Decl. ¶ 17.

Additional work will be required. Class Counsel must still: (1) prepare for and attend the final approval hearing, including finalizing the motion and responding to any objections, (2) respond to inquiries from Class Members, (3) oversee the Settlement through final approval and distribution of benefits, (4) oversee the claims administration process, including addressing any claim review issues, and, if needed, and (5) address any appeals. Class Counsel Decl. ¶ 20. Class Counsel intend to provide the Court with additional information concerning the hours expended prior to the Final Approval Hearing. *Id.*

### b) <u>Class Counsel's Hourly Rates Are Reasonable</u>

Class Counsel are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar complex federal litigation. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "[P]revailing market rates in the relevant community set the reasonable hourly rate for purposes of computing the lodestar amount." *Gonzales v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). In general, "the relevant community is the forum in which the district court sits," id., and because counsel should be compensated for the delay in payment, it is appropriate to apply each biller's current rates for all hours. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994). Counsel's rates are reasonable if they are within the range charged by and awarded to attorneys of comparable experience, reputation, and ability for similar work, i.e., complex class action litigation. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Here, Class Counsel's hourly rates are reasonable in light of their significant experience, expertise, and skill. Class Counsel Decl. ¶ 21. Class Counsel bring decades of experience in data breach and consumer class actions to this case. *Id.* ¶¶ 29-30; Exhibit 1. These hourly rates are in line with prevailing rates in the Ninth Circuit, and similar rates have been approved by other federal and state courts. *Id* ¶ 21; *See, e.g.*, *OWLink Tech., Inc. v. Cypress Tech. Co.*, No. 821CV00717SPGKESX, 2023 WL 9061081, at *2 (C.D. Cal. Dec. 12, 2023) (hourly rates of $1,200 for partners and $900 for associates were reasonable); *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *15 (N.D. Cal. May 25, 2023) (partner rates up to $1,195, associate rates up to $850, and paralegal rates of $325); *Fleming v. Impax Lab'ys Inc.*, No. 16-CV-06557-HSG, 2022

WL 2789496, at *9 (N.D. Cal. July 15, 2022) (hourly rates range from $760 to $1,325 for partners, $895 to $1,150 for counsel, and $175 to $520 for associates); *In re MGM International Resorts Data Breach Litigation*, No. 2:20-cv-0037-GMN-NJK (D. Nev.) (data breach class action settlement, approving hourly rates in the range of $260 to $1,600 for attorneys); *Hellyer et al. v. Smile Brands et al.*, Case No. 8:21-cv-01886-DOC-ADS (C.D. Cal) (approving then rates of $900 per hour for Abbas Kazerounian, and $595 per hour for Mona Amini); *In Re Planned Parenthood Los Angeles Data Incident Litigation*, Case No. 21STCV44106 (Super. Ct. Cal. Los Angeles Cnty.) (approving then rates of $975 per hour for Abbas Kazerounian, and $650 per hour for Mona Amini); *Alfonso v. Williams & Associates, et al.*, No. 2:22-cv-00206-CDS-EJY (D. Nev.) (approving attorneys' prior rates of $550 for Mona Amini and $325 for Gustavo Ponce); and *In re loanDepot Data Breach Litigation*, No. 8:24-cv-00136-DOC-JDE (C.D. Cal. Aug. 25, 2025) (approving rates of $1,075 for Abbas Kazerounian and $725 per hour for Mona Amini).

### c)   **A Positive Multiplier is Justified**

A court may reduce or enhance the lodestar figure based on "a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *Bluetooth*, 654 F.3d at 942 (quoting *Hanlon*, 150 F.3d at 1029). "The district court must apply a risk multiplier to the lodestar 'when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky.' Failure to apply a risk multiplier in cases that meet these criteria is an abuse of discretion." *Stetson*, 821 F.3d at 1166.

Based on these factors, the requested multiplier of 1.49 is modest and in line with other Settlements and more than merited given the excellent results obtained on a contingency basis in this complex case. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 & Appendix (approving 3.65 multiplier and citing cases with multipliers as high as 19.6); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 3:15-md-02672, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) ("'Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation.'") (quoting *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298–99 (N.D. Cal.

1  1995)); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008)

2  (upholding 25% of the fund award resulting in a multiplier of approximately 5.2, and citing cases in

3  support); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) ("Counsel's

4  lodestar yields a 3.07 multiplier, which is well within the range for reasonable multipliers."); *see*

5  *also Lee v. Enter. Leasing Co.-W.*, No. 3:10-CV-00326-LRH, 2015 WL 2345540, at *8 (D. Nev.

6  May 15, 2015) (approving a 2.07 multiplier and noting with favor the *Vizcaino* multiplier of 3.65);

7  *In re MGM International Resorts Data Breach Litigation*, No. 2:20-cv-0037-GMN-NJK (D. Nev.)

8  (data breach class action settlement, approving a multiplier of 1.8)

9       The "prosecution and management of a complex national class action requires unique legal

10  skills and abilities" that are to be considered when determining a reasonable fee. *In re Omnivision*

11  *Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (citation omitted). And the complexity of

12  this case required experienced attorneys and high-quality work. Indeed, this case presented

13  challenges and problem solving that required skilled lawyering—data breach is an emerging and

14  evolving area of law and is especially risky and complex. *See Hashemi v. Bosley, Inc.*, No. CV 21-

15  946 PSG (RAOX), 2022 WL 2155117, at *7 (C.D. Cal. Feb. 22, 2022) ("[D]ata breach class actions

16  are a relatively new type of litigation and that damages methodologies in data breach cases are

17  largely untested and have yet to be presented to a jury."); *Gordon v. Chipotle Mexican Grill, Inc.*,

18  No. 17-CV-01415-CMA-SKC, 2019 WL 6972701, *1 (D. Colo. Dec. 16, 2019) ("Data breach cases

19  such as the instant case are particularly risky, expensive, and complex.").

20       Additionally, "[t]he quality of opposing counsel is important in evaluating the quality of

21  Class Counsel's work." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013).

22  Defendants are represented by one of the largest and most prominent law firms in the country.

23  Plaintiff achieving an excellent result against such a formidable opponent is yet another factor

24  supporting the requested multiplier.

25       The requested multiplier is further justified because Class Counsel accepted this case on

26  contingency with a significant risk of non-payment. *See Stetson*, 821 F.3d at 1166; *Vizcaino*, 290

27  F.3d at 1048-1050; *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (abrogated on

28  other grounds); *Omnivision*, 559 F. Supp. 2d at 1047. "It is an established practice in the private

1  legal market to reward attorneys for taking the risk of non-payment by paying them a premium over

2  their normal hourly rates for wining contingency cases." *In re Washington Pub. Power Supply Sys.*

3  *Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

4        In sum, data breach cases are especially risky, expensive, and complex, and data breach law

5  is constantly evolving. Experts on both sides are almost always in disagreement. Because these

6  types of cases are relatively new and constantly evolving, there is a dearth of data breach class

7  action certification decisions. This means that class certification is uncertain and creates an

8  especially heightened risk. Plaintiff also faced an uncertain road in prevailing beyond summary

9  judgment, trial, and potential appeals. Thus, Class Counsel's "substantial outlay" of time and money

10  and the significant risk that none of it would be recovered further supports the requested multiplier.

11  *Omnivision*, 559 F. Supp. 2d at 1047; *see also Peterson v. Vivendi Ticketing US LLC*, 2024 WL

12  3915154, at *5 (C.D. Cal. June 20, 2024).

13        **3.**  **The Requested Fee Award is Reasonable Under the Percentage Method**

14        Under the percentage method, the district court may award plaintiffs' attorneys a percentage

15  of the common fund. *See Wash. Pub. Power Supply Sys.*, 19 F.3d at 1294 n.2. Although the Ninth

16  Circuit has set 25% of a common fund as the "benchmark," courts award more than the benchmark

17  when justified based on factors like those considered when determining whether a multiplier is

18  appropriate under the lodestar approach. *Vizcaino*, 290 F.3d at 1048, 1051. The typical range of

19  acceptable attorneys' fees is 20% to 33.33% of the total settlement. *Barbosa v. Cargill Meat Sol.*

20  *Corp.*, 297 F.R.D. 431, 448 (9th Cir. 2000); *Daniels v. Aria Resort & Casino, LLC*, No. 2:20-CV-

21  00453-GMN-DJA, 2023 WL 11910245, at *2 (D. Nev. July 31, 2023); *In re Pac. Enters. Sec.*

22  *Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% of class recovery).

23        The analysis begins by determining the size of the fund, and the Court has discretion to

24  determine what portion of the common fund is "for the benefit of the entire class." *Bluetooth*, 654

25  F.3d at 942. As explained above, the Settlement is already valued at $756,524.80 and will continue

26  to increase until the Claims Deadline. As such, the requested $225,000 fee award represents just

27  29.7% of the current estimated total settlement value.

28        Even if the sole consideration was the $675,000 non-reversionary Settlement Fund – it is not

– the requested fees represent one-third of the Settlement Fund.  This, too, is reasonable. *See, e.g.*, *In re Robinhood Outage Litig.*, No. 3:20-CV 01626-JD, 2023 WL 5321525 (N.D. Cal. July 28, 2023) (awarding 30% of common fund); *Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-DB2017, 2017 WL 3116626, at *13 (E.D. Cal. July 21, 2017) (awarding one-third of common fund); *Beasley v. Ttec Servs. Corp.*, No. 22-cv-00097-PAB-STV, 2024 U.S. Dist. LEXIS 29759, at *19 (D. Colo. Feb. 21, 2024) (noting in a data breach class action that a "fee of one-third of the common fund is typical in complex cases"); *Schiller v. David's Bridal, Inc.*, No. 1:10-CV-616-AWI, 2012 WL 2117001, at *17 (E.D. Cal. June 11, 2012) (approving nearly 33% award in fees in a case involving a settlement fund of $518,245).

The strong outcome reflected in the Settlement, the contingent nature of representation, the risks of nonpayment, the complex nature of the litigation, and the high caliber of lawyering required and employed by Class Counsel to bring this case to a favorable resolution weigh in favor of granting the requested fee award.

### 4.   The Requested Fee Award is Comparable to the Fees Awarded in Other Cases

In determining whether an award is reasonable, courts may look to awards made in similar cases. *See Vizcaino*, 290 F.3d at 1050 n.4. "Empirical studies show that, regardless of whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Romero v. Producers Dairy Foods, Inc.*, No. 1:05-cv-0484-DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (quoting NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2007)); *see also Hernandez v. Burrtec Waste & Recycling Servs., LLC*, No. 5:21-CV-01490-JWH-SP, 2023 WL 5725581, at *6 (C.D. Cal. Aug. 21, 2023) (recognizing that most fee awards based on either a lodestar or percentage calculation are 33 percent.). *Anthem* applied the percentage-of-fund approach to award counsel 27% of the settlement fund, for a total of $31.05 million, in a data breach case. *Anthem*, 2018 WL 3960068, at *16. Similarly, *In Re: Ambry Genetics Data Breach Litigation*, No. 8:20-cv-00791 CJC (KESx) (C.D. Cal. March 6, 2023), a data breach case, approved a fee request at 24.33% of settlement value after considering the value of credit monitoring services offered and a 1.94 lodestar multiplier.

Thus, as explained above, the fee request is similar under both the percentage and lodestar

1    methods.

2            **5.   The Requested Fee Award is Not the Product of Collusion**

3            Class Counsel respectfully submit that the Settlement is not in any manner collusive.

4            First, the Settlement Agreement does not contain a clear-sailing agreement, and Defendants'

5    counsel remains free to respond to or oppose Plaintiff's Motion for attorneys' fees and costs.

6            Second, the parties engaged in a substantial exchange of information and confirmatory

7    discovery before presenting the Settlement to the Court. *See In re Mego Fin. Corp. Sec.* Litig., 213

8    F.3d 454, 459 (9th Cir. 2000) ("[F]ormal discovery is not a necessary ticket to the bargaining table

9    where the parties have sufficient information to make an informed decision about settlement.");

10   MCL § 13.12  (recognizing that the benefits of settlement are diminished if it is postponed until

11   discovery is completed and approving of targeting early discovery at information needed for

12   settlement negotiations). Informal discovery is a recognized method of minimizing the cost, delay,

13   and burden associated with formal discovery. *See* MCL § 11.423.

14           Although the parties agreed to a mediation, the Parties had already fully briefed their

15   respective positions related to Defendants' Motion to Dismiss.  Also, in advance of the mediation,

16   Plaintiff propounded informal discovery requests and, through the provision of informal discovery

17   and the Parties' exchange of detailed mediation briefs outlining their positions with respect to

18   liability, damages, and settlement-related issues, Plaintiff received additional information regarding

19   the cause and the scope of the Data Incident and was able to be well-informed about the claims and

20   Defendants' claimed defenses in this case. This supports a finding that the negotiations were

21   performed at arm's-length without collusion or fraud. *See Swain v. Anders Group, LLC*, No. 1:21-

22   cv-00197-SKO, 2022 WL 5250139, *10 (E.D. Cal. Oct. 6, 2022) ("A settlement is presumed to be

23   fair if it follows sufficient discovery and genuine arm's-length negotiation") (quoting *Adoma v.*

24   *Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (cleaned up)); *see also Mondrian v.*

25   *Trius Trucking, Inc.*, No. 1:19-cv-00884-ADA, 2022 WL 6226843, *8 (E.D. Cal. Oct. 7, 2022)

26   (finding that private mediation with an experienced mediator following six months of litigation with

27   substantial discovery strongly supports a finding that there was no collusion or fraud). Class

28   Counsel have significant experience prosecuting data breach class actions and are well-informed of

KAZEROUNI
LAW GROUP, APC

1    the legal claims at issue and the risks of this case. Class Counsel Decl. ¶ 7.

2        Third, the mediation and the Parties' settlement negotiations were at arm's length and

3    facilitated and overseen by Bruce Friedman, Esq. through JAMS, an experienced and well-respected

4    mediator. Class Counsel Decl. ¶ 5. While no presumption of fairness attaches, this supports a

5    finding that the negotiations were fair and without collusion or fraud. *See Hashemi v. Bosley, Inc.*,

6    No. CV 21-946 PSG (RAOX), 2022 WL 2155117, at *6 (C.D. Cal. Feb. 22, 2022) ("In general,

7    evidence that a settlement agreement is arrived at through genuine arms-length bargaining with a

8    mediator supports a conclusion that the settlement is fair."); *Swain*, 2022 WL 5250139, *10 (same);

9    *G.F. v. Contra Costa Cnty.*, No. 3:13-cv-03667, 2015 WL 4606078, *13 (N.D. Cal. July 30, 2015)

10   ("[t]he assistance of an experienced mediator in the settlement process confirms that the settlement

11   is non-collusive"); *In re Bluetooth*, 654 F.3d at 948 (finding that engaging in formal mediation with

12   an experienced mediator weighs "in favor of a finding of non-collusiveness").

13       Fourth, the Settlement is non-reversionary—a factor that weighs against any indicia of

14   collusion. Cases in the Ninth Circuit that have identified "subtle signs" of collusion include those

15   where the defendant is set to recover some of the settlement fund through a reversionary agreement.

16   *See McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 610 (9th Cir. 2021) ("[W]e have identified

17   'reverter' or 'kicker' provisions as red flags."); *Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D.

18   101, 122 (D. Ariz. 2022) (granting preliminary approval but denying settlement without prejudice to

19   re-file and correct, *inter alia*, "subtle signs" of collusion); *Maree v. Deutsche Lufthansa AG*, No.

20   No. 8:20-cv-00885, 2022 WL 5052582, *4 (C.D. Cal. Sep. 30, 2022) (denying claims-made

21   settlement due to the "clandestine" nature of settlement negotiations conducted without any formal

22   discovery). That is not the case here.

23       Lastly, the Settlement Agreement is not conditioned in any way on Class Counsel's award of

24   attorneys' fees, costs, or the Service Award to the Class Representative. SA § VIII.D. The requested

25   fee is "substantial but not so disproportionate as to suggest collusion." *Lim v. Transforce, Inc*., No.

26   LA CV19-04390 JAK (AGRX), 2022 WL 17253907, at *12 (C.D. Cal. Nov. 15, 2022) (fee request

27   of up to 33% does not suggest collusion). Again, when considering only the $675,000.00 cash

28   Settlement Fund—i.e., without taking into account the full value of other Settlement Benefits—

KAZEROUNI
LAW GROUP, APC

Class Counsel's requested fee award amounts to just one-third of the Settlement Fund.

**B.  Class Counsel are Entitled to Reimbursement of Litigation Costs.**

Class Counsel are entitled to recover out-of-pocket expenses that would ordinarily be charged to a fee-paying client. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." *Rutti v. Lojack Corp., Inc.,* No. SACV 06–350 DOC (JCx), 2012 WL 3151077, *12 (C.D. Cal. July 31, 2012).

Here, Class Counsel has incurred a total of $11,674.14 in unreimbursed litigation costs to date. Class Counsel Decl. ¶ 26.  These costs were reasonably necessary for the prosecution and ultimate successful resolution of this litigation and were incurred by Class Counsel for the benefit of Settlement Class Members, and there was no guarantee that they would be reimbursed. *Id*.  28; *See Staton,* 327 F.3d at 974 (class counsel entitled to reimbursement of expenses reasonably incurred). Accordingly, Plaintiff respectfully submits that these litigation costs are reasonable, and the Court should approve their reimbursement.

**C.  The Court Should Approve the Service Award for the Class Representative**

"It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards." *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198, 2017 WL 661352, at *4 (N.D. Cal. Feb. 17, 2017) (citation omitted). Service awards, which are discretionary, "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). "In the Ninth Circuit, a $5,000 incentive award is presumptively reasonable." *Carter v. Vivendi Ticketing US LLC*, 2023 WL 8153712, at *11 (C.D. Cal. Oct. 30, 2023) (citing cases); *see also Vivendi Ticketing*, 2024 WL 3915154, at *6 (with respect to $2,500 service awards, finding that "[t]his amount does not appear to be unreasonable, as incentive awards typically range between $2,000 and $10,000.") (citing cases).

Class Counsel believes a modest Service Award of $2,500 to the Class Representative fairly

compensates the Class Representative for her personal effort in coming forward to initiate this case and the risk and commitment entailed in pursuing this litigation as the named Plaintiff on behalf of the Class. Class Counsel Decl. ¶ 15.   Plaintiff put her name and reputation on the line for the sake of the Class, and no recovery would have been possible without their critical role.   Similar and greater amounts for class representatives have been awarded in other data breach class action settlements. *See, e.g.*, *Anthem*, 2018 WL 3960068, at *30–31 (awarding $7,500 to 29 class representatives and $5,000 to 76 class representatives); *Lee v. Enterprise Leasing Co.-West*, No. 3:10–CV–00326–LRH–WGC, 2015 WL 2345540 (D. Nev. May 15, 2015) ($10,000 awarded to each plaintiff); *In re MGM International Resorts Data Breach Litigation*, No. 2:20-cv-0037-GMN-NJK (D. Nev.) (data breach class action settlement, approving service awards of $10,000 to each plaintiff).

Therefore, Plaintiff respectfully submits the Service Award is reasonable and should be approved by the Court.

## IV.    CONCLUSION

Based on the foregoing, Plaintiff and Class Counsel respectfully request that this Court enter an order granting an award of attorneys' fees in the amount of $225,000 and reasonable costs and expenses of litigation in the amount of $11,674.14, and the Service Award in the amount of $2,500 for the Class Representative.

DATED this 22nd day of September 2025.          Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: *   /s/  Mona Amini*
Abbas Kazerounian, Esq. (*pro hac vice*)
Mona Amini, Esq. (Nevada Bar No. 15381)
Gustavo Ponce, Esq. (Nevada Bar No. 15084)
6940 S. Cimarron Road, Suite 210
Las Vegas, Nevada 89113
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523
ak@kazlg.com
gustavo@kazlg.com
mona@kazlg.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY pursuant to Rule 5 of the Federal Rules of Civil Procedure that on September 22, 2025, the foregoing document was served via CM/ECF to all parties appearing in this case.

KAZEROUNI LAW GROUP, APC

By: */s/  Mona Amini*
Mona Amini, Esq.

PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY'S FEES, COSTS, AND SERVICE AWARD