Abbas Kazerounian, Esq.
(*admitted pro hac vice*)
Mona Amini, Esq.
Nevada Bar No. 15381
Gustavo Ponce, Esq.
Nevada Bar No. 15084
**KAZEROUNI LAW GROUP, APC**
6940 S. Cimarron Road, Suite 210
Las Vegas, Nevada 89113
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
mona@kazlg.com
gustavo@kazlg.com

*Attorneys for Plaintiff*
*and the Settlement Class*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| HEATHER HILLBOM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>R1 RCM, INC.; and DIGNITY HEALTH d/b/a DIGNITY HEALTH - ST. ROSE DOMINICAN HOSPITAL, ROSE DE LIMA CAMPUS,<br><br>Defendants. | Case No.: 2:24-cv-00664-JAD-EJY<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARD** |

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1
I.    INTRODUCTION ................................................................................................... 1
II.   BACKGROUND ..................................................................................................... 2
      A.    Factual Background .................................................................................... 2
      B.    Procedural History ..................................................................................... 2
      C.    Settlement Negotiations and Mediation ..................................................... 2
      D.    Preliminary Approval and Settlement Administration ............................... 3
      E.    Plaintiff and Class Counsel's Motion for Award of Fees, Costs, and Service Award ...... 4
III.  SUMMARY OF THE SETTLEMENT TERMS ..................................................... 6
      A.    The Settlement Class................................................................................... 6
      B.    The Settlement Benefits ............................................................................. 6
            1.    Medical Identity-Theft Monitoring and Protection Services ............ 7
            2.    Monetary Payment ............................................................................ 8
            3.    Out-of-Pocket Expenses Payment..................................................... 8
            4.    Extraordinary Losses Payment ......................................................... 9
      C.    Distribution of Residual Funds from the Net Settlement Fund .................. 9
      D.    Service Award for the Class Representative ............................................. 10
      E.    Attorney's Fee Award and Costs ............................................................. 10
IV.   THE NOTICE PROGRAM AND REACTION OF THE SETTLEMENT CLASS ............... 10
      A.    The Notice Program .................................................................................. 10
      B.    The Claims Process and Requests for Exclusion and Objections .............. 11
V.    FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED........................ 12
      A.    Certification of the Settlement Class ....................................................... 12
      B.    The Settlement is Fundamentally Fair, Reasonable, and Adequate.......... 12
            1.    The Strength of Plaintiff's Case...................................................... 13
            2.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation ........ 14
            3.    The Settlement Benefits and Relief Offered in the Settlement............... 15
            4.    The Discovery Completed and Stage of Proceedings ....................... 16
            5.    Experience and Views of Class Counsel ......................................... 17
            6.    The Settlement Class Members' Positive Reaction to the Settlement ................... 17
            7.    The Rule 23(e)(3) Factors are Satisfied .......................................... 17
                  a)    The Class Representative and Class Counsel Adequately
                        Represented the Settlement Class ......................................... 18
                  b)    The Settlement is Non-Collusive and Was Negotiated at Arm's Length ...... 19
                  c)    The Relief to the Class is Adequate ...................................... 19
                  d)    The Settlement Treats Class Members Equitably .......................... 20
VI.   CONCLUSION.................................................................................................... 20

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Pursuant to Fed. R. Civ. P. Rule 23, Plaintiff Heather Hillbom ("Plaintiff" and "Class Representative"), individually and on behalf of the Settlement Class, submits this Motion for Final Approval of the Class Action Settlement, and Award of Attorneys' Fees, Costs, and Service Award, in accordance with the Settlement Agreement.[1] Plaintiff's Motion is supported by this Memorandum of Points and Authorities, and the Declarations of Class Counsel and the Settlement Administrator.  Plaintiff's Motion is unopposed by Defendants.

The Settlement satisfies all the criteria for final approval. Consistent with the requirements of the Preliminary Approval Order (Dkt. 39) and the Settlement Agreement, the Notice Program was successfully effectuated. As of October 30, 2025, 665 Settlement Class Members have submitted Claims, there has been only one Request for Exclusion, and no objections have been received from the Settlement Class. This overwhelmingly positive response to the Settlement strongly supports final approval and affirms the Court's initial conclusion in the Preliminary Approval Order that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class Members.

Based on the points and authorities further discussed herein, and in Plaintiff's Motion for Award of Attorney's Fees, Costs, and Service Award (Dkt. 40) which is incorporated by reference, this Court should find that the Settlement is within the range of reasonableness necessary to grant final approval pursuant to Fed. R. Civ. P. Rule 23(e), and Plaintiff respectfully requests that the Court enter an order: (1) granting final approval of the Settlement; (2) confirming certification of the Settlement Class for settlement purposes, (3) confirming the appointment of Plaintiff as the Class Representative; (4) confirming Plaintiff's counsel, Abbas Kazerounian, Mona Amini, and Gustavo Ponce of Kazerouni Law Group, APC, as Class Counsel; (5) awarding Class Counsel the requested Fee Award and Costs; (6) awarding a Service Award to the Class Representative; (7) affirming the appointment of the Settlement Administrator and approving the payment of

---

[1]    Capitalized terms not explicitly defined herein are defined per the Settlement Agreement.

Administrative Expenses; and (8) entering final judgment and the proposed Final Approval Order.

## II.    BACKGROUND

### A.    <u>Factual Background</u>

This data breach class action arises out of Defendants' alleged failure to properly secure and safeguard the personally identifying information ("PII") and personal health information ("PHI") of Plaintiff and Settlement Class Members, including but not limited to their names, Social Security numbers, dates of birth, addresses, contact information, medical record numbers, patient account numbers, medical information, and location of services. *See* Dkt. 1, Plaintiff's Class Action Complaint ("Complaint") ¶ 1.

On or around January 30, 2023, an unauthorized third party may have accessed the PII and/or PHI of certain current and former patients of Dignity Health, including Plaintiff and the Settlement Class Members, by exploiting a zero-day vulnerability within the GoAnywhere file transfer platform (the "Data Incident"). *Id*. ¶¶ 3, 46, 17. After learning of the Data Incident, Defendants undertook an investigation into the matter and began notifying Plaintiff and Settlement Class Members of the Data Incident in March 2024. *Id*. ¶¶ 17, 48, 50.

### B.    <u>Procedural History</u>

On April 5, 2024, Plaintiff filed the Complaint against Defendants in the U.S. District Court for the District of Nevada, thereby initiating this Action. Dkt. 1. Subsequently, on August 27, 2024, Defendants moved to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, challenging Plaintiff's standing to bring her claims and to seek injunctive relief and seeking dismissal of the Complaint for an alleged failure to state a claim for which relief can be granted. Dkt. 18. After conclusion of the parties' briefing related to Defendants' Motion to Dismiss, the Parties stipulated to a stay of the Action, including deferral of the hearing on Defendants' Motion to Dismiss, pending the Parties' mediation. Dkt. 25.

### C.    <u>Settlement Negotiations and Mediation</u>

On January 29, 2025, the Parties participated in a full-day mediation facilitated by well-respected neutral Bruce Friedman, Esq. of JAMS. In preparation for the mediation, Plaintiff

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

1   propounded informal discovery requests and, through informal discovery and the Parties' exchange
2   of detailed mediation briefs outlining their positions with respect to liability, damages, and
3   settlement-related issues, Plaintiff received additional information regarding the cause and the
4   scope of the Data Incident and was able to be well-informed about and to evaluate the merits of
5   Defendants' position. As a result of the Parties' arm's-length bargaining at the mediation, and the
6   mediator's proposal provided by Mr. Friedman, to avoid the risk and expense of protracted
7   litigation, the Parties reached a settlement in principle.  Over the months following the mediation,
8   the Parties engaged in further negotiation efforts, exchanging multiple drafts of the Settlement
9   Agreement and its supporting exhibits, and ultimately arrived at the terms as memorialized in the
10  Settlement Agreement, subject to Court approval. As demonstrated below, the Settlement provides
11  significant relief for the Settlement Class, including a non-reversionary cash Settlement Fund of
12  $675,000.00.

13      **D.  <u>Preliminary Approval and Settlement Administration</u>**

14          On June 13, 2025, Plaintiff filed a Motion for Preliminary Approval of the Settlement (Dkt.
15  36). On July 14, 2025, the Court held a hearing and granted Plaintiff's Motion for Preliminary
16  Approval of the Settlement (Dkt. 30), finding the Settlement within the range of reasonableness
17  necessary to grant preliminary approval under Fed. R. Civ. P. 23(e). The Court entered the
18  Preliminary Approval Order (i) granting preliminary approval of the Settlement; (ii) provisionally
19  certifying the Settlement Class for settlement purposes; (iii) appointing the Plaintiff as Class
20  Representative; (iv) appointing Abbas Kazerounian, Mona Amini, and Gustavo Ponce as Class
21  Counsel for the Settlement Class; (v) approving the form of the Notice and the Notice Program;
22  (vi) approving the Claim Form and the Claims process; (vii) appointing Simpluris, Inc. as the
23  Settlement Administrator; (viii) establishing the Request for Exclusion and Objection procedures
24  and deadlines; and (ix) scheduling a Final Approval Hearing for November 14, 2025, at which time
25  the Court will decide whether to grant final approval of the Settlement and whether to grant Class
26  Counsel's Motion for Fee Award and Costs and a Service Award to Plaintiff.

27  //

28

1    Since the Preliminary Approval Order was entered, Class Counsel has worked with the

2  Settlement Administrator to implement the Notice and Claims process and to ensure (1) the Notice

3  has been properly disseminated to Settlement Class Members and (2) the Claims process has gone

4  smoothly for Settlement Class Members. *See* Declaration of Mona Amini ("Class Counsel Decl.")

5  ¶ 13. Specifically, Class Counsel reviewed and audited the Settlement Website, reviewed weekly

6  reports from the Settlement Administrator regarding the progress of the Notice and Claims process,

7  conferred with the Settlement Administrator as needed, and responded to inquiries from Settlement

8  Class Members. *Id*. Class Counsel will continue to dedicate significant efforts through Final

9  Approval to oversee further Settlement administration, to work with and communicate with

10  Settlement Class Members and the Settlement Administrator, and to otherwise see the Settlement

11  through to the end. *Id*. ¶ 14.

12    **E.** **Plaintiff and Class Counsel's Motion for Award of Fees, Costs, and Service Award**

13    On September 22, 2025, Plaintiff filed a Motion for Award of Attorneys' Fees and Costs

14  ("Motion for Fee Award and Costs") and Service Award (Dkt. 40).  In the Motion for Fee Award

15  and Costs, Plaintiff explained the value of the Settlement Benefits was estimated to be

16  approximately $756,524.80 based on the $675,000 non-reversionary cash Settlement Fund, and the

17  additional value of $81,524.80 to the Settlement Class based on the retail value of the Medical

18  Identity-theft Monitoring and Protection Services (after deducting the cost of providing the

19  services) and the number of claims submitted at the time for the Medical Identity-theft Monitoring

20  and Protection Services.[2] Plaintiff's Motion for Fee Award and Costs further noted that the total

21  estimated value of the Settlement was expected to continue to increase as additional Claims were

22  anticipated from Settlement Class Members through the November 11, 2025 Claims Deadline.

23    Based on the Claims submitted at the time of the Motion for Fee Award and Costs, Class

24  Counsel's requested attorney's fees of $225,000 represented approximately 29.7% of the then-

25  estimated total Settlement value conferred upon the Settlement Class.  In addition, Class Counsel's

26

27

28  [2] The Medical Identity-Theft Monitoring and Protection Services subscription is valued at
$29.95/month, which equates to $718.80 for the two-year term.

4

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

Motion for Fee Award and Costs provided the Court with sufficient information to perform a lodestar cross-check, identifying the 201.2 hours incurred by Plaintiff's counsel at the time and the lodestar of $150,628.00, which was understandably anticipated to increase through the date of the Final Approval Hearing. Class Counsel also calculated that the requested Fee Award and Costs represented a modest multiplier of 1.49 based on the amount of the lodestar at the time of the Motion for Fee Award and Costs.

Since the filing of Plaintiff's Motion for Fee Award and Costs, Class Counsel's lodestar has increased, largely due to the time Class Counsel has devoted to briefing the Motion for Fee Award and Costs and the instant motion for final approval, working with the Settlement Administrator on overseeing the Settlement, responding to any Settlement Class Member inquiries, reviewing the weekly reports from the Settlement Administrator regarding the Claims process, and otherwise overseeing the Settlement towards final approval. This has resulted in a total of 229.5 hours spent on this litigation and a lodestar of $173,320.50 as of the date of filing Plaintiff's Motion for Final Approval. Class Counsel Decl. ¶ 8.

Given the current estimated total Settlement value of $961,742.40,[3] and the updated lodestar of $173,320.50, the requested attorneys' fees of $225,000 amounts to just 23.4% of the current estimated Settlement value, and a modest lodestar multiplier of approximately 1.3. *Id*. ¶¶ 8, 10, 25. This lodestar and multiplier are fair and reasonable in light of the significant risks Class Counsel faced, the contingent nature of representation, the complexity of the issues presented, the total value of the Settlement Benefits, and the excellent results achieved for the benefit of the Settlement Class; and compare favorably with fee awards in other similar data breach cases. *Id*. ¶ 24. As discussed in Plaintiff's Motion for Fee Award and Costs, the Settlement Agreement did not contain a clear-sailing agreement related to Class Counsel's Fee Award and Costs, and Defendants were free to oppose Plaintiff's Motion; however, no opposition or objection has been received to date.

---

[3] The estimated total Settlement value of $961,742.40 is based on the $675,000 non-reversionary cash Settlement Fund, plus the additional value of the 408 Claims submitted by the Settlement Class for the Medical Identity-Theft Monitoring and Protection Services, which results in an added value of $286,724.40 after deducting the cost of securing those services. Class Counsel Decl. ¶ 8.

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

1  Plaintiff's Motion for Fee Award and Costs also explained that Class Counsel had incurred a total
2  of $11,674.14 in unreimbursed litigation costs to date, which were reasonable and necessary for the
3  prosecution and ultimate successful resolution of this Action, and which were incurred by Class
4  Counsel for the benefit of Settlement Class.

5      Also, Plaintiff's Motion for Fee Award and Costs (Dkt. 40) requested a reasonable Service
6  Award of $2,500 for Plaintiff for participating in this Action as the Class Representative. This
7  recognizes Plaintiff's personal effort associated with coming forward to initiate this case and the
8  risk and commitment entailed in pursuing this litigation as the named Plaintiff on behalf of and for
9  the benefit of the Settlement Class.

10  **III.    SUMMARY OF THE SETTLEMENT TERMS**

11      **A.   The Settlement Class**

12      The Parties have agreed that the following Settlement Class can be certified for settlement
13  purposes: **All individuals whose PII and/or PHI was potentially impacted in the Data Incident**
14  **who were sent notice of the Data Incident by Defendants.**

15      In exchange for the Settlement Benefits, all Settlement Class Members who did not submit a
16  timely Request for Exclusion will release all Released Claims against all Released Parties as
17  detailed in the Settlement Agreement. SA §§ V.D, X.

18      **B.   The Settlement Benefits**

19      The Settlement provides for a non-reversionary $675,000.00 cash Settlement Fund, which
20  was fully funded by the Defendants and will be used to make payments in the following order: (i)
21  all Administrative Expenses (including applicable taxes, if any), (ii) any Court-approved Fee Award
22  and Costs and Service Award, (iii) the costs of providing the Medical Identity-Theft Monitoring and
23  Protection Services, (iv) Settlement Payments for Out-of-Pocket Expenses and Extraordinary
24  Losses; and (v) Monetary Payments. SA § III.F.

25      All Settlement Class Members may submit a Claim Form to receive (1) two years of
26  Medical Identity-Theft Monitoring and Protection Services, which includes $1,000,000 Identity
27  Theft Insurance; (2) a Monetary Payment, which will be a *pro rata* share of the Net Settlement

28

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

KAZEROUNI
LAW GROUP, APC

1   Fund after all other Settlement Benefits have been paid; (3) Out-of-Pocket Expenses payment, for

2   reimbursement of documented Out-of-Pocket Expenses up to $500.00 for each Settlement Class

3   Member; and (4) Extraordinary Losses payment, for reimbursement of documented Extraordinary

4   Losses up to $2,500.00 for each Settlement Class Member. SA § III.B.1-4.

5       **1.       Medical Identity-Theft Monitoring and Protection Services**

6       Each Settlement Class Member is eligible to receive an activation code for two (2) years of

7   Medical Identity-Theft Monitoring and Protection Services, specifically, Medical Shield Total

8   offered through CyEx. The expenses associated with procuring the Medical Identity-Theft

9   Monitoring and Protection Services will be paid by the Settlement Administrator from the Net

10  Settlement Fund. In addition to providing three-bureau credit monitoring, the Medical Identity-

11  Theft Monitoring and Protection Services monitor medical and healthcare data to help determine

12  whether an individual's PHI is at risk or has been exposed to medical fraud, and they include:

13  Healthcare Insurance Plan ID Monitoring, Medicare Beneficiary Identifier ID Monitoring, Medical

14  Record Number Monitoring, International Classification of Disease Monitoring, National Provider

15  Identifier Monitoring, Health Savings Account Monitoring, Dark Web Monitoring, $1,000,000

16  Identity Theft Insurance, Real-Time Authentication Alerts, High-Risk Transaction Monitoring,

17  Security Freeze Assist, and Victim Assistance. To receive Medical Identity-Theft Monitoring and

18  Protection Services, a Settlement Class Member must submit a valid and timely Claim to the

19  Settlement Administrator electing to receive this Settlement Benefit. SA § III.B.1.

20      The Medical Identity-Theft Monitoring and Protection Services product has a regular retail

21  value of $29.95 per month for each Settlement Class Member electing to receive that Settlement

22  Benefit. *See* Dkt. No. 36-6, Declaration of Jerry Thompson on behalf of CyEX, ¶ 8. Thus, for the

23  two-year term, each subscription is valued at $718.80. As of October 30, 2025, there have been 408

24  Claims submitted by the Settlement Class for the Medical Identity-Theft Monitoring and Protection

25  Services. *See* Admin. Decl. ¶ 13. Based on that number of Claims, the gross value of the Medical

26  Identity-Theft Monitoring and Protection Services to the Settlement Class is $293,270.40, before

27  the cost of securing those services. Combined with the Settlement Fund, after deducting the cost of

28

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

providing the services to the Settlement Class, the total estimated value of the Settlement has increased to $961,742.40. Class Counsel Decl. ¶ 8.

### 2.    Monetary Payment

In addition to the Medical Identity-Theft Monitoring and Protection Services, each Settlement Class Member is eligible to receive a Monetary Payment in the form of a check or digital payment from the Settlement Fund for the alleged damages they suffered as a result of having their PII and/or PHI potentially impacted in the Data Incident. The amount for each Settlement Class Member's Claim for the Monetary Payment will be a *pro rata* share of the Net Settlement Fund after all other Settlement Benefits have been paid, including payment for all Claims for Medical Identity-Theft Monitoring and Protection Services, Out-of-Pocket Expenses, and Extraordinary Losses. To receive a Monetary Payment, a Settlement Class Member must submit a valid and timely Claim Form to the Settlement Administrator. SA § III.B.2.

The Claims Deadline is on November 11, 2025, and has not yet passed.  However, based on the Claims received as of October 30, 2025, the Settlement Administrator estimates each of the 590 Settlement Class Members who submitted valid and timely Claims for Monetary Payment will receive a Monetary Payment of approximately $683.18. *See* Admin. Decl. ¶ 13.

### 3.    Out-of-Pocket Expenses Payment

In addition to the Medical Identity-Theft Monitoring and Protection Services and Monetary Payment, each Settlement Class Member may submit a Claim for up to $500.00 for reimbursement of Out-of-Pocket Expenses. To receive an Out-of-Pocket Expenses payment, a Settlement Class Member must submit to the Settlement Administrator the following: (i) a valid and timely Claim Form electing to receive the Out-of-Pocket Expenses Settlement Benefit; (ii) an attestation regarding any actual and unreimbursed Out-of-Pocket Expenses; and (iii) Reasonable Documentation that demonstrates the Out-of-Pocket Expenses to be reimbursed. SA § III.B.3.

The Claims Deadline is on November 11, 2025, and has not yet passed.  However, as of October 30, 2025, the Settlement Administrator has not yet received a Claim for documented Out of Pocket Expenses. *See* Admin. Decl. ¶ 13.

**4.     Extraordinary Losses Payment**

In addition to the Medical Identity-Theft Monitoring and Protection Services, Monetary Payment, and Out-of-Pocket Expenses payment, each Settlement Class Member may submit a Claim for up to $2,500.00 for reimbursement of Extraordinary Losses.  To receive an Extraordinary Losses payment, a Settlement Class Member must submit to the Settlement Administrator the following: (i) a valid and timely Claim Form electing to receive the Extraordinary Losses Settlement Benefit; (ii) an attestation regarding any actual and unreimbursed Extraordinary Losses; and (iii) Reasonable Documentation that demonstrates the Extraordinary Losses to be reimbursed. SA § III.B.4.

The Claims Deadline is on November 11, 2025, and has not yet passed.  However, as of October 30, 2025, the Settlement Administrator has received one Claim for Extraordinary Losses Payment, however, the supporting documentation submitted with the Claim was determined to be insufficient proof of an Extraordinary Loss. *See* Admin. Decl. ¶ 13.

Participating Settlement Class Members who submit Approved Claims will be provided the option to receive any Settlement Payment due to them under the terms of this Agreement via various digital or electronic means.  Settlement Class Members who do not exercise this option will receive their Settlement Payment in the form of a physical check sent via U.S. Mail. SA § III.C.

**C.  Distribution of Residual Funds from the Net Settlement Fund**

The proposed method of distributing the Settlement Benefits is designed to exhaust the Settlement Fund, including a distribution of Residual Funds from the Net Settlement Fund to a Non-Profit Residual Funds Recipient,[4] as *cy pres,* in order to provide the full Settlement value to the Settlement Class Members, and no portion of the Settlement Fund shall revert or be repaid to Defendants and/or their insurer(s) after the Effective Date. *Id.*; SA §§ F, G, I.

//

//

---

[4] If the necessity arises, the Non-Profit Residual Funds Recipient shall be agreed upon by the Parties and approved by the Court, prior to the distribution of any Residual Funds.

**D. <u>Service Award for the Class Representative</u>**

Plaintiff seeks a Service Award in the amount of $2,500. The Service Award is comparable to those awarded in other similar settlements. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *1 (N.D. Cal. July 22, 2020), *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022) (approving $2,500 to $7,500 awards in data breach case). Plaintiff has participated in this litigation from its inception, spent time providing valuable information to Class Counsel in connection with investigating and developing their claims in this Action, reviewed and approved documents including the Complaint and the Settlement Agreement, and dedicated herself to vigorously pursuing litigation on behalf of Settlement Class Members, including committing and exposing herself to the possibility of sitting for depositions and testifying publicly at trial. *See* Dkt. 36-4, Declaration of Heather Hillbom ¶¶ 6-7.

**E. <u>Attorney's Fee Award and Costs</u>**

As discussed above, and in Plaintiff's Motion for Fee Award and Costs, Class Counsel respectfully request an award of attorney's fees in the amount of $225,000.00, plus reimbursement of costs in the amount of $11,674.14. The Class Notice advised the Settlement Class Members that Class Counsel would make such an application, and Plaintiff's Motion for Fee Award and Costs was posted and available on the Settlement Website.

**IV.    THE NOTICE PROGRAM AND REACTION OF THE SETTLEMENT CLASS**

**A. <u>The Notice Program</u>**

The Court-approved Notice Program and the Settlement provided for dissemination of Notice to Settlement Class Members in multiple ways to best ensure Notice was provided in a reasonable and practical manner. In particular, the Notice methods provided for in this Settlement Agreement consist of (1) the Postcard Notice for all Settlement Class Members for whom Defendants have a mailing address on file in Defendants' business records or for whom a physical address can be identified with reasonable effort of the Settlement Administrator (SA § II.I, Exhibit A); (2) the Long Form Notice posted on the Settlement Website (*Id.*; Exhibit B); and (3) e-mail notice to any Settlement Class Members for whom Defendants have an e-mail address on file in

1  Defendants' business records and for whom Postcard Notice was returned as undeliverable. SA § V.

2       On July 31, 2025, the Settlement Administrator mailed the Postcard Notice to 15,955

3  Settlement Class Members[5] for whom Defendants had an address from through either the

4  Settlement Class List or its review of the National Change of Address ("NCOA") database. The

5  Postcard Notice advised Settlement Class Members of their right to submit a Claim, submit a

6  Request for Exclusion from the Settlement, object to the Settlement, or do nothing, and the

7  implications of each such action. The Postcard Notice advised Settlement Class Members of

8  applicable deadlines and other events, including the Final Approval Hearing, and how Settlement

9  Class Members may obtain additional information. As of the date of this filing, 2,155 Postcard

10 Notices have been returned to our office by the U.S. Postal Service as undeliverable. The Settlement

11 Administrator performed a computerized skip trace on all 2,155 returned Postcard Notices in an

12 effort to obtain an updated address for purposes of remailing the Postcard Notice. As a result of this

13 skip trace, 1,640 updated addresses were obtained and the Postcard Notices were promptly re-

14 mailed to the Settlement Class Members. After all of these steps were taken, a total of 515 Postcard

15 Notices remained undeliverable. Accordingly, the direct Postcard Notice reached 96.8% of the

16 Settlement Class. *See* Declaration of Settlement Administrator Simpluris, Inc. ("Admin. Decl.") ¶ 9.

17   **B.  The Claims Process and Requests for Exclusion and Objections**

18       As of October 30, 2025, 665 Settlement Class Members (approximately 4.2% of the

19 Settlement Class) have submitted Claims, there has been only one Request for Exclusion, and no

20 objections have been received from the Settlement Class. This overwhelmingly positive response to

21 the Settlement strongly supports final approval and affirms the Court's initial conclusion in the

22 Preliminary Approval Order that the Settlement is fair, reasonable, adequate, and in the best interest

23 of the Settlement Class Members.

24       Based on the number of Claims received from the Settlement Class Members as of October

25 30, 2025, the Settlement Administration currently estimates the following distribution from the Net

26 _____

27 [5] The Settlement estimated approximately 16,121 Settlement Class Members. After the Settlement
   Administrator's review of the Class List and de-duplication of data, the final Settlement Class List
28 was confirmed to contain 15,955 Settlement Class Members. *See* Admin. Decl. ¶ 4.

KAZEROUNI
LAW GROUP, APC

Settlement Fund:[6]

| Settlement Benefit | Number of Claims | Amount per Claim submitted by Settlement Class Members |
|---|---|---|
| Medical Identity-Theft Monitoring and Protection Services | 408 | 2-year subscription valued at $718.80 |
| Monetary Payment | 590 | $683.13 |
| Out of Pocket Expenses Payment | 0 | $0 |
| Extraordinary Losses Payment | 1 | $0 |

## V.    FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED

### A.    Certification of the Settlement Class

The Preliminary Approval Order (Dkt. 39) certified the Settlement Class for settlement purposes, and detailed the Court's findings for why it would be likely to certify the Settlement Class at the final approval stage, finding that the requirements of Rule 23(a) and 23(b)(3) of Federal Rules of Civil Procedure were all met and the Settlement Class satisfies numerosity, commonality, typicality, adequacy of representation, predominance, and a class action and class settlement are superior and the most efficient and effective means for resolving the controversy. *Id.* at 2-3. Given that nothing has changed since the Preliminary Approval Order, Plaintiff respectfully requests that the Court finally certify the Settlement Class.

### B.    The Settlement is Fundamentally Fair, Reasonable, and Adequate

The decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge[.]" *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The Supreme Court has recognized the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  In *Andersen v. Briad Restaurant Group LLC*, No. 2:14-cv-00786-GMN-BNW, 2022 WL 181262, at *2 (D. Nev. Jan. 19, 2022) (Navarro, J.), this Court observed:

---

[6] *See* Admin. Decl. ¶ 13

12

KAZEROUNI LAW GROUP, APC

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, a class action may not be settled without court approval. Fed. R. Civ. P. 23(e). When the parties to a putative class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). At the preliminary stage, the court must first assess whether a class exists. *Id.* (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L.Ed.2d 689 (1997)). Second, the court must determine whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). If the court preliminarily certifies the class and finds the proposed settlement fair to its members, the court schedules a fairness hearing where it will make a final determination as to the fairness of the class settlement. Third, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

Approval of class action settlements is governed by Federal Rule of Civil Procedure 23 (e), and requires court approval. Courts must "determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citation and quotation marks omitted). In considering whether this standard is met, courts consider various factors, including (1) the strength of the plaintiff's case, (2) the risk, expense, complexity, and likely duration of further litigation, (3) the risk of maintaining class action status throughout the trial, (4) the amount offered in settlement, (5) the extent of discovery completed and the stage of the proceedings, (6) the experience and views of counsel, and (7) the reaction of class members to the proposed settlement. *Id.*

### 1. The Strength of Plaintiff's Case

When assessing the strength of [the] plaintiff's case, the court does not reach 'any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation.'" *Van Lith v. iHeartMedia + Entm't, Inc.*, No. 1:16-CV-00066-SKO, 2017 WL 1064662, at *11 (E.D. Cal. Mar. 20, 2017) (quoting *Adoma v. Univ. of Phoenix, Inc.*, 913 F.Supp.2d 964, 975 (E.D. Cal. 2012)). The court must "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Adoma*, 913 F.Supp.2d at 975.

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

1    While Plaintiff and Class Counsel believe there is evidence from which the Court could

2 ultimately rule in favor of Plaintiff's claims, there are mitigating factors, inherent risks of litigation,

3 and no guarantee if this case moves forward through protracted litigation. Defendants have already

4 argued that it will be difficult for Plaintiff to show damages caused by the Data Incident; indeed, the

5 Parties vigorously briefed this issue, as well as many other issues, in connection with Defendants'

6 pending Motion to Dismiss. Class Counsel Decl. ¶¶ 4, 7, 23.  As the litigation proceeds, Defendants

7 would also likely argue that there are individualized issues related to the harm resulting from the

8 Data Incident, posing a risk that a class may not be successfully certified if Plaintiff's motion for

9 certification was opposed. *Id.* Where a court determines that a claim may have "some measure of

10 merit," but that it also faces inherent weaknesses, the court should find that the "strength of

11 [p]laintiff's case" factor "weighs in favor" of approval of the settlement. *See Van Lith*, 2017 WL

12 1064662, at *11.

13        2.    <u>**The Risk, Expense, Complexity, and Likely Duration of Further Litigation**</u>

14    In assessing the degree of risk of continued litigation, "the court evaluates the time and

15 cost required." *Adoma*, 913 F.Supp.2d at 976. "[U]nless the settlement is clearly inadequate, its

16 acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id*.

17 (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal.

18 2004)). "The parties . . . save themselves the time, expense, and inevitable risk of litigation.

19 Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of

20 cost and elimination of risk, the parties each give up something that they might have won had

21 they proceeded with litigation." *Officers for Justice v. Civil Service Com'n of City and County of*

22 *San Francisco,* 688 F.2d 615, 624 (9th Cir. 1982); (quoting *United States v. Armour & Co.*, 402

23 U.S. 673, 681–82 (1971)).

24    The risk and expense of continued litigation is plain; absent settlement, the Parties would be

25 required to continue litigation, which would first require Plaintiff to defeat Defendants' pending

26 Motion to Dismiss, and, assuming she were successful, necessarily then involve significant

27 discovery, a contested motion for certification, and other dispositive motions such as a motion for

28

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

1  summary judgment and possible appeals. All told, the ultimate recovery might be of no greater

2  value—or of lesser value—than that provided for in the Settlement Agreement. Moreover, the

3  process only becomes more complex over a longer time period, as new issues may emerge through

4  discovery. Accordingly, this factor clearly weighs in favor of approval. Class Counsel Decl. ¶ 12;

5  *see, e.g., Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (concluding

6  that this factor favored approval where "there remained significant procedural hurdles for the

7  putative class to confront, including certification" and "there were significant risks in continued

8  litigation and no guarantee of recovery").

9         **3.    The Settlement Benefits and Relief Offered in the Settlement**

10        The relief offered in a settlement is assessed as a whole, "complete package" for overall

11  fairness. *DIRECTV, Inc.*, 221 F.R.D. at 527 (quoting *Officers for Justice*, 688 F.2d at 628).

12  Indeed, it is "well-settled law that a proposed settlement may be acceptable even though it amounts

13  to only a fraction of the potential recovery that might be available to the class members at trial." *Id*.

14  (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

15        Here, the Settlement Benefits provided through the $675,000 Settlement Fund include the

16  ability of Settlement Class Members to not only claim two years of Medical Identity-Theft

17  Monitoring and Protection Services, which includes $1,000,000 Identity Theft Insurance, but also

18  significant monetary relief, including: a Monetary Payment, which will be a *pro rata* share of the

19  Net Settlement Fund after all other Settlement Benefits have been paid; Out-of-Pocket Expenses

20  payment, for reimbursement of documented Out-of-Pocket Expenses up to $500.00 for each

21  Settlement Class Member; and Extraordinary Losses payment, for reimbursement of documented

22  Extraordinary Losses up to $2,500.00 for each Settlement Class Member. SA § III.B.1-4.

23        This Settlement compares very favorably to the following approved common fund data

24  breach class action settlements from around the country, as the amount of the Settlement Fund

25  ($675,000) alone equates to approximately $41.87 per individual based on approximately 16,120

26  Settlement Class Members, which is comparable or superior to other data breach class action

27  settlements (*see, e.g., In Re: Banner Health Data Breach Litigation,* No. 2:16-cv-02696-PHX-SRB

28

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

1    (D. Ariz. 2020) ($3.07); *Adlouni v. UCLA Health Systems Auxiliary, et al*., No. BC589243 (Cal.

2    Super. Ct. 2019) ($1.67); *In re Experian Data Breach Litigation,* No. 8:15-cv-01592-AG (C.D. Cal.

3    2019) ($1.47); *In re Anthem, Inc. Data Breach Litigation,* No. 5:15-md-02617-LHK (N.D. Cal.

4    2017) ($1.39)), even without accounting for the additional settlement value provided of the Medical

5    Identity-Theft Monitoring and Protection Services for each Settlement Class Member electing to

6    receive that Settlement Benefit. While a larger award is "theoretically possible, 'the very essence of

7    a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" *Barbosa*,

8    297 F.R.D. at 447 (*quoting Linney*, 151 F.3d at 1242); *Hanlon*, 150 F.3d at 1027 (the fact that "the

9    settlement could have been better . . . does not mean the settlement presented was not fair,

10    reasonable, or adequate"). Thus, this factor weighs in favor of final approval of the Settlement.

**4.    The Discovery Completed and Stage of Proceedings**

12          Class Counsel initiated preliminary review and investigation of the applicable law and facts

13    pertaining to the alleged claims, potential defenses thereto, the damages claimed at issue, and

14    potential exposure. In addition, the Parties engaged in vigorous, contested motion practice, and

15    exchanged informal discovery as well as mediation briefs. Class Counsel obtained ample

16    information from Defendants which was appropriately targeted at information relevant to the

17    Settlement. Class Counsel Decl. ¶¶ 6, 13; *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454,

18    459 (9th Cir. 2000) ("[F]ormal discovery is not a necessary ticket to the bargaining table where the

19    parties have sufficient information to make an informed decision about settlement."); Manual for

20    Complex Litigation (Fourth) § 13.12 (recognizing that the benefits of settlement are diminished if it

21    is postponed until discovery is completed and approving of targeting early discovery at information

22    needed for settlement negotiations). Informal discovery is a recognized method of minimizing the

23    cost, delay, and burden associated with formal discovery. *See* Manual for Complex Litigation

24    (Fourth) § 11.423. Class Counsel's analysis of the mediation and confirmatory discovery aided

25    them in confirming the fairness and adequacy of the Settlement. The timing of the Settlement

26    allowed Plaintiff to maximize the recovery for the class and direct resources (*i.e.*, funds) to the

27    Settlement Class that otherwise would have been spent on litigation. By resolving this case at this

28

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

stage of the proceedings, Plaintiff not only maximized the recovery to the Settlement Class, but also secured an amount that is favorable compared to other approved data breach settlements.

### 5. Experience and Views of Class Counsel

Class Counsel has extensive experience in litigating consumer class actions, specifically data breach class actions. Class Counsel Decl. ¶¶ 16-20; Exhibit 1. The Settlement provides Settlement Class Members with immediate, certain, and substantial meaningful relief that directly addresses the issues they have allegedly experienced, or might experience, related to the Data Incident. The language of the Settlement's release is properly tailored to the Data Incident, and Class Counsel fully endorses the Settlement as fair, reasonable, and adequate, and in the best interests of the Settlement Class. *Id.* ¶ 33.

### 6. The Settlement Class Members' Positive Reaction to the Settlement

As discussed above, and detailed in the declaration submitted by the Settlement Administrator, the Settlement Class Members' reaction to the Settlement has been extremely positive. The Notice to Settlement Class Members and Settlement Website informed them of their rights and options related to the Settlement, including the deadline to submit a Request for Exclusion and the Objection Deadline, which passed on October 13, 2025. *See* Admin. Decl. ¶ 12. As of October 30, 2025, the Settlement Administrator has received 665 Claims (approximately 4.2% of the Settlement Class), only one request for exclusion, and zero objections to the Settlement. *Id.* ¶¶ 12-13. This demonstrates the positive reaction of the Settlement Class to this Settlement. *See DIRECTV*, 221 F.R.D. at 529 ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members.").

The Claims Deadline is on November 11, 2025; however, based on the Claims received as of October 30, 2025, the Settlement Administrator currently estimates each of the 590 valid and timely Claims for a Monetary Payment will receive approximately $683.18. *See* Admin. Decl. ¶ 13.

### 7. The Rule 23(e)(3) Factors are Satisfied

Pursuant to Rule 23(e)(2), the Court also must find the settlement "fair, reasonable, and

---

adequate" after consideration of the following factors:

> (A) the class representatives and class counsel adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class- member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

### a) The Class Representative and Class Counsel Adequately Represented the Settlement Class

Plaintiff and Class Counsel vigorously and adequately represented the Settlement Class. Plaintiff does not have any conflicts of interest with the absent Settlement Class Members, as Plaintiff's claims are coextensive with those of the Settlement Class Members and arise from the same Data Incident. *General Tel. Co. v. Falcon*, 457 U.S. 147, 157–58, n.13 (1982). Further, through the litigation to date, Plaintiff and Class Counsel submit and understand their responsibility in serving as Class Representative and Class Counsel and have committed themselves to vigorously pursuing litigation on behalf of the Settlement Class, through the Effective Date and ultimate conclusion of the Settlement. *See* Class Counsel Decl. ¶¶ 4, 32; Dkt. 36-4, Hillbom Decl. ¶¶ 6-7.

Also, Class Counsel are adequate to represent the Settlement Class's interests and should be appointed Class Counsel. In retaining Class Counsel, Plaintiff retained attorneys who are "qualified, experienced and able to conduct the proposed litigation." *Hester v. Vision Airlines, Inc*., No. 2:09-cv-00117, 2009 WL 4893185, at *5 (D. Nev. Dec. 16, 2009) (internal quotation omitted). With their extensive experience in class actions and other complex litigation, including data breach litigation, there can be no doubt Class Counsel are adequate to represent the Settlement Class in this Action. *See* Class Counsel Decl. ¶¶ 16-20; Exhibit 1. Class Counsel have litigated this Action from its inception, including, *inter alia*, investigating evaluating the claims, preparing comprehensive pleadings, pursuing informal discovery, responding to Defendants' Motion to Dismiss, and

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

participating in a mediation that ultimately resulted in this Settlement. *See* Class Counsel Decl. ¶ 4.
Accordingly, Plaintiff and Class Counsel will adequately represent the Settlement Class.

### b) *The Settlement is Non-Collusive and Was Negotiated at Arm's Length*

The Settlement was reached after the Parties engaged in arm's length negotiations by
participating in a full-day mediation session with Mr. Bruce Friedman, whose guidance and
experience aided in reaching the Settlement. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654
F.3d at 948 (formal mediation with experienced mediator weighs "in favor of a finding of non-
collusiveness"). Further, Class Counsel have significant experience prosecuting data breach
consumer class actions and are well-informed of the legal claims and risks of this case.  After
reaching agreement on material terms, the Parties worked on and exchanged multiple drafts of the
Settlement Agreement and related exhibits, including the proposed Notice Program, compared
multiple bids from competing settlement administrators and credit monitoring and worked through
the process to select the administrator and monitoring product best suited for this Settlement. Class
Counsel Decl. ¶ 5. The resulting Settlement is the product of the Parties' arm's length bargaining,
which allows for a presumption of fairness.

The Settlement easily withstands "great[] scrutiny," (*In re Bluetooth Headset Prods. Liab.
Litig.*, 654 F.3d at 949) because: (1) the attorney's fees were negotiated after all other materials
terms of the settlement, (2) this is a non-reversionary cash settlement, (3) the majority of the
Settlement Fund being provided by Defendants for this Settlement will be provided to the
Settlement Class, and (4) the Settlement is in no way conditioned on the approval of the Fee Award
and Costs. SA § VIII.D; *see also Lim v. Transforce, Inc*., No. LA CV19-04390 JAK, 2022 WL
17253907, *12 (C.D. Cal. Nov. 15, 2022) (granting preliminary approval and finding no collusion
where non-reversionary settlement reached under supervision of mediator).

### c) *The Relief to the Class is Adequate*

As set forth above, the Settlement Benefits and relief provided by the Settlement is
reasonable and adequate, particularly in light of the risks and delay that further motion practice,
trial, and associated appeals would entail. As discussed above, the Settlement is presently valued in

excess of $961,742.40, including the $675,000 non-reversionary cash Settlement Fund, and the more than $286,724.40 in additional value that the Medical Identity-Theft Monitoring and Protection Cervices provides to the participating Settlement Class Members. Counsel Decl. ¶ 8.

### d)  The Settlement Treats Class Members Equitably

The Settlement treats Settlement Class Members equitably relative to each other and their claims. The Agreement provides that all Settlement Class Members are eligible to receive two-years of Medical Identity-Theft Monitoring and Protection Services. SA § III.B.1. This is a benefit offered equally to all Settlement Class Members. Additionally, all Settlement Class Members may make a Claim for an Out-of-Pocket Expenses payment and an Extraordinary Losses payment, for reimbursement of documented losses as a result of the Data Incident, as well as for a *pro rata* Monetary Payment. SA § III.B.2-4.  These Settlement Benefits are also all equally offered to all Settlement Class Members. Accordingly, the Settlement treats all Settlement Class Members equally.

## VI.    CONCLUSION

Based on the foregoing memorandum of points and authorities, as well as the record in this Action, including the Declarations Class Counsel, and the Settlement Administrator submitted in connection with the Settlement, Plaintiff and Class Counsel respectfully request that this Court grant Plaintiff's Motion for Final Approval and enter the proposed final judgment and order consistent with the terms of the Settlement in this case.

Respectfully submitted,

DATED this 31st day of October 2025.          **KAZEROUNI LAW GROUP, APC**

By:  ___/s/  Mona Amini_____
      Abbas Kazerounian, Esq. (*pro hac vice*)
      Mona Amini, Esq. (Nevada Bar No. 15381)
      Gustavo Ponce, Esq. (Nevada Bar No. 15084)
      6940 S. Cimarron Road, Suite 210
      Las Vegas, Nevada 89113
      Telephone: (800) 400-6808
      Facsimile:  (800) 520-5523
      ak@kazlg.com
      mona@kazlg.com
      gustavo@kazlg.com
      *Attorneys for Plaintiff and the Settlement Class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY pursuant to Rule 5 of the Federal Rules of Civil Procedure that on October 31, 2025, the foregoing document was served via CM/ECF to all parties appearing in this case.

**KAZEROUNI LAW GROUP, APC**

By: */s/ Mona Amini*
Mona Amini, Esq.

21